**SIMON PROPERTY GROUP, L.P.,**
**Appellant/Cross–Appellee/Plaintiff,**

v.

**MICHIGAN SPORTING GOODS DISTRIBUTORS, INC., Appellee/Cross–Appellant/Defendant.**

No. 79A02–0411–CV–989.

Court of Appeals of Indiana.

Nov. 30, 2005.

Andrew J. Detherage, Charles P. Edwards, Mark J. Crandley, Barnes & Thornburg LLP, Indianapolis, for Appellant.

Dean F. Pacific, James J. Rabaut, Janet L. Ramsey, Matthew T. Nelson, Warner Norcross & Judd LLP, Grand Rapids, MI, Max Layden, Layden & Layden, Lafayette, for Appellee.

## OPINION

MAY, Judge.

Simon Property Group, L.P., ("Simon") brings this interlocutory appeal of the trial court's grant of the motion to correct error filed by Michigan Sporting Goods Distributors, Inc., ("MC Sports") after the court granted Simon's motion for summary judgment. Simon raises one issue, which we

restate as whether the trial court abused its discretion when it granted MC Sports' motion to correct error because MC Sports had waived its arguments by failing to raise them prior to the court's grant of summary judgment. MC Sports cross-appeals, arguing the trial court erroneously granted summary judgment to Simon regarding the availability of additional remedies under the relevant section of the contract.

We affirm and remand.

## FACTS AND PROCEDURAL HISTORY

Simon owns and operates shopping malls, including the Tippecanoe Mall in Lafayette, Indiana. MC Sports is a retailer of sporting goods. On or about June 29, 2001, MC Sports and Simon entered into a fifteen-year lease for space at the Tippecanoe Mall. Section 24.23 of that lease provides:

So long as Tenant is open and operating in the Premises for the use permitted herein and is not in default under this Lease, Landlord will not lease space in the Center to any operator of a "full-line" sporting goods store (hereinafter referred to as "Competing Business"). If Landlord violates or suffers the violation of this paragraph and fails to cure such violation within ninety (90) days after receipt of Tenant's notice, then Tenant shall have the right to pay in lieu of Minimum Rent, Percentage Rent and additional rent (except taxes and utilities) the lesser of an amount equal to (i) the Minimum Annual Rent due and payable under this Lease or (ii) four percent (4%) of Adjusted Gross Sales until the Competing Business ceases operation in the Center. Notwithstanding the foregoing, this paragraph shall be inapplicable to (a) any tenant or occupant open

for business in the Center on the date of this Lease; (b) any existing Major Tenant in the Center or any subsequent transferee of such Major Tenant to the extent that the Landlord has no consent or approval rights over the permitted use of such subsequent transferee, and (c) any tenant selling specialty licensed soft goods and (d) any Tenant selling historic memorabilia. For purposes of this paragraph, a "full-line" sporting goods store shall be deemed any store selling "hard goods" (such as, but not limited to, fitness, athletic and/or outdoor equipment) in an area greater than 10,000 square feet.

(App. at 27.)

On or about February 2, 2004, Simon leased space in the Tippecanoe Mall to Dick's Sporting Goods. Because MC Sports believed Simon's lease of space to Dick's violated Section 24.23 of MC Sports' lease with Simon, MC Sports filed an action against Simon in federal court, seeking damages and injunctive relief for Simon's breach of contract.[1]

On May 28, 2004, in the Tippecanoe Circuit Court, Simon filed a declaratory judgment action against MC Sports, asking the court to determine the parties' rights and obligations under the lease. Specifically, Simon asserted it "is initiating this lawsuit to confirm that the remedies available to MC Sports for any violation of Section 24.23 of the Lease are those expressly agreed to by Simon and MC Sports in that section of the Lease." (*Id.* at 25.) Simon requested the court "declare that MC Sports' exclusive remedies for any violation of Section 24.23 of the Lease are those agreed to by Simon and MC Sports in that section of the Lease, as set forth in Paragraph 7 of this Complaint and in Section 24.23 of the Lease." (*Id.*)

1. The federal action eventually was dismissed for lack of diversity jurisdiction.

MC Sports filed an Answer, which included affirmative defenses and a counterclaim.[2] The counterclaim asserted Simon breached Section 24.23 of its contract with MC Sports by leasing space in the Tippecanoe Mall to Dick's, which MC Sports alleged is a "full-line sporting goods retailer." (*Id.* at 32.) MC Sports requested an injunction, monetary damages, and rescission of the contract between MC Sports and Simon.

The same day it filed its answer, MC Sports moved for summary judgment.[3] The conclusion of the brief in support of that motion requested summary judgment only as to "Simon's claim that MC Sports' remedies are limited to seeking reduced rent." (*Id.* at 48.) The argument deals only with the remedy provision, but asserts: "Simon effectively concedes that the lease with Dick's is a breach of its Lease with MC Sports." (*Id.* at 38.)

Simon answered MC Sports' counterclaim and requested an extension of time to respond to the summary judgment motion. In response to the counter-claim, Simon denied breaching the contract and asserted a number of affirmative defenses. After conducting discovery, Simon responded to MC Sports' motion for summary judgment. In its response, it asserted MC Sports was not entitled to summary judgment but rather that Simon was entitled to summary judgment because (1) Simon's lease of space to Dick's at Tippecanoe Mall did not breach Section 24.23 of the lease, and (2) if Section 24.23 was violated by the lease to Dick's, MC Sports' only remedy for violation is the rent reduction explained in Section 24.23. Simon never filed a separate motion for summary judgment. On October 15, 2004, Simon filed additional evidence in support of its positions.

On October 18, 2004, MC Sports filed a reply brief and designation of evidence addressing whether the reduced rent provision was MC Sports' only remedy if Simon breached Section 24.23 of the Lease. MC Sports did not address on the merits whether Simon's lease to Dick's violated Section 24.23 of MC Sports' lease.

The court conducted a hearing and then entered summary judgment for Simon. The order included the following:

### Findings of Fact

\* \* \* \* \* \*

5. "Specialty licensed soft goods" include goods such as t-shirts, sweatshirts, jackets and hats bearing logos of colleges or professional sports teams. MC Sports dep., Whipple trans. at 231–32.

6. Dick's Sporting Goods, Inc. ("Dicks") sells specialty licensed soft goods at its store at Tippecanoe Mall. *Id.* at 288; Affidavit of Joseph Queri, ¶ 7.

7. The Lease contains several provisions related to remedies. In some of those provisions, like section 24.23, the parties set forth the remedy that would be available in the event of a violation of the provision. MC Sports dep., Whipple trans. at 194–95, 209–10, Exh. 25 at sections 8.1 and 8.7.

8. In other provisions relating to remedies, where the parties wanted to permit additional remedies, they expressly said so. . . . Exh. 25 at [Sections 3.3, 4.3, 7.2, 8.2, 18.1, 18.2, 18.6, 20.2].

\* \* \* \* \* \*

---

**2.** MC Sports also filed a motion for preliminary injunction, which motion was later withdrawn.

**3.** Simon's Appendix does not contain a copy of the motion, and MC Sports did not file an Appendix.

11. Section 24.23 of the Lease was negotiated and drafted by both of the parties during the negotiations over the terms of the Lease, with Simon acting as the scrivener for the parties' revisions. MC Sports dep., Whipple trans. at 287–88.

12. During the negotiations over the terms of the Lease, MC Sports asked for the insertion of additional tenant remedies .... This proposal was not incorporated into the final Lease by the parties. *See* MC Sports' dep., Whipple trans., Exh. 25 at 23.

13. During the negotiations concerning Section 24.23 of the Lease, MC Sports asked that an additional remedy of termination be added to Section 24.23. Affidavit of William E. Conway ¶ 4; MC Sports['] dep., Whipple trans. at 253–54 (emphasis added); *see also id.* at Exh. 21. Simon rejected the request and confirmed that the reduced rent remedy was the sole remedy for any violation of Section 24.23. *Id.*

14. In their negotiations over the terms of Section 24.23 of the Lease, Simon and MC Sports agreed that the remedy of reduced rent set forth in that section would be the only remedy for any violation of that section. MC Sports['] dep., Whipple trans. at 214–16, 241–42, 255–56 and Exh. 25; Affidavit of William E. Conway, ¶ 4.

### Conclusions of Law

\* \* \* \* \* \*

3. Section 24.23 of the Lease states, in relevant part that, "this paragraph shall be inapplicable to ... any tenant selling specialty licensed soft goods." The evidence designated to the Court is undisputed that the meaning of the term "specialty licensed soft goods" includes goods such as t-shirts, sweatshirts, jackets and hats bearing logos of colleges or professional sports teams. It is likewise undisputed from the evidence designated to the Court that Dick's sells such items. Thus, because Section 24.23 of the Lease between Simon and MC Sports states that it is inapplicable to any tenant selling specialty licensed soft goods, and because Dick's sells specialty licensed soft goods, the Court concludes as a matter of law that the lease between Simon and Dick's does not violate Section 24.23 of the Lease.

4. Section 24.23 of the Lease also states, in relevant part, that "[i]f Landlord violated or suffers the violation of this paragraph and fails to cure such violation within ninety (90) days after receipt of Tenant's notice, then Tenant shall have the right to pay in lieu of Minimum Rent, Percentage Rent and additional rent (except taxes and utilities) the lesser of an amount equal to (i) the Minimum Annual Rent due and payable under this Lease or (ii) four percent (4%) of Adjusted Gross Sales until the Competing Business ceases operation in the Center." This provision of Section 24.23 is similar to other sections of the Lease—like sections 8.1 and 8.7—that provide only one remedy for a violation of the section; and it is dissimilar to other sections of the Lease—like sections 3.3, 4.3, 7.2, 8.2, 18.1, 18.2, 18.6, and 20.2—that state that the remedies provided are in addition to other remedies. Thus, the Court concludes that when the Lease is read as a whole and its provisions are harmonized, it is plain and unambiguous that this provisions of Section 24.23 sets forth MC Sports' sole remedy for any violations of Section 24.23 of the Lease by Simon.

5. MC Sports contends that the language of Section 24.23 of the Lease quoted in paragraph 4 does not set forth its sole and exclusive remedy in the

event of a violation of that section by Simon because it does not contain the words "sole" or "exclusive," or words to that effect. The Court concludes, however, that interpreting the language in the manner urged by MC Sports would require the Court to ignore the structure and intent of the parties' Lease as a whole in favor of an isolated reading of a single section of the Lease. Such a reading would violate the well-settled rule of construction in Indiana that contracts are to be construed as a whole, and "words, phrases, sentences, paragraphs, paragraphs [sic] and sections of a contract cannot be read alone." [citation omitted]

6. MC Sports also contends that the last sentence of Section 3.3 of the Lease, stating that "[a]ll remedies in this Lease or at law provided shall be cumulative and not exclusive should be construed to give MC Sports' [sic] remedies for a violation of Section 24.23 beyond the sole remedy of reduced rent specifically provided in Section 24.23." The Court concludes that such a construction would violate the well-settled rule of construction in Indiana that contracts are to be construed as a whole, and "words, phrases, sentences, paragraphs, paragraphs [sic] and sections of a contract cannot be read alone." [citation omitted] Further the Court concludes that divorcing a single sentence from Section 3.3, which is entitled "Failure of Tenant to Perform" and deals with Simon's remedies in the event MC Sports fails to meet certain obligations under the Lease, and applying that sentence beyond Section 3.3 would render meaningless numerous provisions of the Lease dealing with specific remedies negotiated between the parties, which also would violate well-settled rules of contract interpretation. [citation omitted.]

7. The Court concludes that, at a minimum, the Lease is susceptible to more than one meaning and, thus, ambiguous with respect to whether the remedy provided in Section 24.23 is MC Sports' exclusive remedy for any violation of Section 24.23. The case MC Sports' [sic] cites as involving language nearly identical to Section 24.23 reached this same conclusion. [citation omitted] The extrinsic evidence related to the actual negotiations between Simon and MC Sports for the Lease leads to only one conclusion: that Simon and MC Sports intended and agreed that MC Sports' sole remedy for a violation of Section 24.23 of the Lease would be the reduced rent set forth in Section 24.23.

8. The Court concludes that the other cases relied upon by MC Sports are inapposite. It is the duty of the Court to interpret each contract based on the intent of the parties to that contract . . . . .

9. Although Simon has not filed a separate motion for summary judgment, Ind. Trial Rule 56(B) states, in relevant part, that "[w]hen any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party." Here, the Court concludes that, pursuant to Trial Rule 56(B), summary judgment in favor of Simon is warranted on each of the following grounds:

a) The designated evidence is undisputed that Simon's lease with Dick's does not violate Section 24.23 of the Lease between Simon and MC Sports;

b) The Lease unambiguously provides that the reduced rent remedy set forth in Section 24.23 for a violation of that section by Simon is MC Sports'

exclusive remedy in the event of such a violation; and

c) Even if the Lease were ambiguous concerning whether the reduced rent remedy set forth in Section 24.23 for a violation of that section by Simon is MC Sports' exclusive remedy in the event of such a violation, the extrinsic evidence concerning the parties' actual intent is undisputed and leads only to one conclusion: that Simon and MC Sports agreed that MC Sports' sole remedy for a violation of Section 24.23 of the Lease would be the reduced rent set forth in Section 24.23.

10. Because each of the parties' claims and counterclaims in this action necessarily depends on a breach of the Lease, as well as the remedies for such a breach, the Court concludes that Simon is entitled to summary judgment on each of MC Sports' counterclaims, as well as on Simon's declaratory judgment claim.

(*Id.* at 7–16.)

MC Sports filed a motion to correct error asserting (1) the question whether Simon's lease with Dick's violated Section 24.23 of the lease was not raised by MC Sports' motion for summary judgment, (2) MC Sports had not been allowed to conduct adequate discovery to address that issue, and (3) there was a genuine issue of material fact regarding whether Simon's lease to Dick's violated Section 24.23.[4] Simon filed a response alleging the pleadings had raised the issue of whether Simon had breached the Lease by renting space to Dick's; "The Undisputed Record Evidence Designated To the Court" supports a conclusion that Simon had not breached the Lease, (*id.* at 688); MC Sports had an opportunity to conduct discovery and re-spond to the issue of breach, but it failed to do so prior to the grant of summary judgment; and MC Sports' new argument that a genuine issue of fact exists is untimely and unsupported by the record.[5] After a hearing, the court granted MC Sports' motion:

1. Trial Rule 56(B) permits summary judgment to be entered against a party moving for summary judgment, but only on issues raised by the moving party's motion.

2. The only issue raised in MC Sports' Motion for Summary Judgment on Plaintiff's Claim for Declaratory Judgment is, as the title of MC Sports' motion states, whether MC Sports was entitled to summary judgment on Simon's claim for declaratory relief.

3. MC Sports' motion, in its entirety, states:

This is a declaratory judgment action filed by Plaintiff Simon Property Group, LP ("Simon"). *The only issue raised* in Simon's Complaint is the appropriate remedy for Simon's breach of its lease (the "Lease") with Michigan Sporting Goods Distributors, Inc. ("MC Sports"). Even though the Lease Simon drafted expressly provides that all remedies contained in the Lease are cumulative and not exclusive, Simon claims that MC Sports' sole remedy for its breach of the Lease is payment of reduced rent. Because Simon's claim for declaratory relief is contrary to both the Lease and well-established principles of Indiana law as set forth more fully in the accompanying Brief, MC Sports respectfully moves this Court to grant summary judgment against Simon's

---

4. The motion did not challenge the trial court's grant of summary judgment to Simon on the issue of what remedies were available to MC Sports under Section 24.23.

5. At the same time MC Sports filed its motion to correct error, it filed a notice of appeal.

claim for declaratory judgment. (Emphasis added.)

4. After Simon raised the issue of whether there had been a breach of the Lease in its Opposition to Michigan Sporting Goods Distributors, Inc.'s Motion for Summary Judgment, MC Sports confirmed in its Reply Brief in Support of its Motion for Summary Judgment that MC Sports' motion did not raise the issue of whether Simon breached the parties' Lease. Specifically, MC Sports noted that "the only issue in this motion is whether MC Sports is entitled to summary judgment on Simon's claim for declaratory relief." (Michigan Sporting Goods Distributors, Inc.'s Reply Brief in Support of its Motion for Summary Judgment, 1.)

5. MC Sports' counsel confirmed again, on the record at the hearing on Mc [sic] Sports' motion that Mc [sic] Sports did not seek summary judgment on the issue of breach.

6. In fact, the issue of whether Simon had breached the Lease was not even at issue at the time that MC Sports filed its motion for summary judgment because the issue was not raised in Simon's Complaint. MC Sports filed its motion simultaneously with its Answer, Affirmative Defenses, and Counterclaim. Although allegations of Simon's breach of Section 24.23 of the Lease were made in MC Sports' Counter-claim, Simon had not yet denied those allegations, so it was not yet clear that Simon would in fact contest that it had breached Section 24.23 of the Lease. MC Sports did not move for summary judgment on any of the claims asserted in its Counter-claim.

7. Contrary to Simon's argument at the December 13th hearing, Simon's Complaint did not raise the issue of whether Simon breached the Lease. Simon's allegation in paragraph 9 of its Complaint that "MC Sports filed suit against Simon in the United States District Court for the Southern District of Indiana alleging that Simon is in violation of Section 24.23 of the Lease" did not, as Simon suggests, raise the issue of Simon's breach in this action.

8. Nor did the request for relief in Simon's Complaint ask this Court to declare that Simon did not breach the Lease. Simon's request for relief states, in its entirety:

WHEREFORE, Simon respectfully requests that the Court enter judgment in its favor and against MC Sports declaring that MC Sports' exclusive remedies for any violation of Section 24.23 of the Lease are those agreed to by Simon and MC Sports in that section of the Lease, as set forth in Paragraph 7 of this Complaint and in Section 24.23 of the Lease, and for all other just and proper relief.

9. The only issue raised in Simon's Complaint, and accordingly, the only issue raised by MC Sports' motion for summary judgment on that complaint, was whether MC Sports' remedies for any violation of Section 24.23 of the Lease by Simon were limited to the remedy stated in that section.

10. Summary judgment in favor of Simon on the issue of whether Simon breached Section 24.23 of the Lease should not have been granted under Rule 56(B).

11. Indeed, the issue of whether Simon had breached Section 24.23 of the Lease is not ripe for summary judgment. The only evidence presented to the Court that the Dick's Sporting Goods, Inc. ("Dick's") store in the Tippecanoe Mall sold specialty licensed soft goods came in the Affidavit of Joseph Queri that was filed by certified mail on

October 15th, two business days before the hearing on MC Sports' motion.[6]

12. Such short notice clearly did not provide MC Sports with the opportunity to conduct discovery, including a Rule 34 inspection of the Dick's store and the deposition of Mr. Queri.

13. Moreover, the Court will not permit Simon to refuse to provide discovery regarding its lease of space in the Tippecanoe Mall to Dick's then rely upon testimony from a Dick's representative submitted at the eleventh hour to support its opposition to MC Sports' motion.

14. In any event, there is a genuine issue of material fact regarding what the parties intended by the term "any tenant selling specialty licensed soft goods." The clause is ambiguous, and reasonably intelligent people can differ regarding the meaning of the clause.

15. The evidence is sufficient to show that the parties may have intended for Section 24.23 to prohibit Simon from leasing space in the Tippecanoe Mall to Dick's. (See Trial Rule 30(B)(6) Deposition of Simon, at Ex. H, at SPG000039; Deposition of Robert LaBelle, at 121 & Ex. 29 at 27.) The parties should be permitted to complete discovery and present appropriate motions for summary judgment on the issue of breach after the completion of discovery.

16. If MC Sports should more properly have brought its present motion under Trial Rule 59, the Court finds that no prejudice to Simon occurred because Simon was provided the opportunity to respond to MC Sports' motion and Simon did in fact respond.

17. Likewise, Simon's claim that MC Sports' motion for reconsideration was deemed denied by action of Trial Rule 53.4(B) because the Court did not act on MC Sports' motion before November 28, 2004 is incorrect. The five-day period provided by Rule 53.4(B) expired on December 2nd pursuant to Trial Rule 6(A). The Court ordered a hearing on MC Sports' motion on November 30th, within the period provided Rule 53.4(B).

Accordingly, MC Sports' motion for reconsideration is GRANTED, and the Court vacates paragraphs 5 and 6 page 2, paragraph 3 on page 6, and paragraphs 9(a) and 10 on page 10 of its Order entered October 29, 2004.

(*Id.* at 18–22) (footnote in original).

## DISCUSSION AND DECISION

1. *Simon's Procedural Arguments Regarding Breach*

 Simon appeals the trial court's grant of MC Sports' motion to correct error.[7] A trial court has broad discretion to grant a motion to correct error, and we review its decision for an abuse of that discretion. *Supervised Estate of Williamson v. Williamson,* 798 N.E.2d 238, 241 (Ind.Ct.App.2003). An abuse of discretion has occurred if the trial court's decision is clearly against the logic and effect of the facts and circumstances, or the reasonable

---

6. "1 The testimony by Mr. Whipple of MC Sports cited by Simon does not show that the Dick's store at the Tippecanoe Mall, which was not yet open, sold 'specialty licensed soft goods.'"

7. MC Sports' motion was captioned a "Motion for Reconsideration." (App. at 646.) As Simon notes, such a motion is improper after a final judgment. *Hubbard v. Hubbard,* 690 N.E.2d 1219, 1221 (Ind.Ct.App.1998). However, as Simon concedes, the court may treat such a motion as a motion to correct error. *See id.* The trial court's order granting MC Sports' motion explicitly noted Simon was not prejudiced by MC Sports' naming the motion one for reconsideration rather than a motion to correct error under Trial Rule 59. We treat the motion as a motion to correct error.

inferences therefrom, that were before the court, or if the court has misapplied the law. *Id.*

The trial court granted summary judgment to Simon regarding whether Section 24.23 of the Lease had been breached, holding there was no genuine issue of material fact that Simon's lease to Dick's did not violate Section 24.23. MC Sports filed a motion to correct error alleging the issue of breach was not before the court pursuant to MC Sports' motion for summary judgment. The trial court granted MC Sports' motion to correct error, finding it had erroneously granted summary judgment on the issue of breach when the issue had not been raised.

Simon claims the trial court erred in granting MC Sports' motion to correct error because the issue of breach was before the trial court at the summary judgment stage. Simon asserts MC Sports' argument to the contrary "ignored the issues actually raised by its motion for summary judgment and was based on a mistaken and impermissibly narrow construction of the pleadings in this case." (Appellant's Br. at 19.)

 Simon asserts the court could have granted summary judgment to Simon on the issue of breach under Trial Rule 56(B). Trial Rule 56(B) allows the trial court to grant summary judgment to "any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party." Simon asserts MC Sports' motion for summary judgment raised the issue of breach; however, Si-

mon failed to include a copy of MC Sports' motion for summary judgment in its Appendix. Accordingly, we cannot determine whether the language MC Sports used in that motion raised the issue of breach.

However, Simon did include in its Appendix the brief MC Sports filed in support of its motion for summary judgment. The brief argues for summary judgment on only the issue raised by Simon's complaint, which was what remedies are available for a breach of Section 24.23 of the Lease. Because MC Sports did not ask for summary judgment on the issue of breach,[8] MC Sports did not raise that issue. Accordingly, the trial court could not grant summary judgment to Simon on the issue of breach under Trial Rule 56(B), and we cannot hold the trial court abused its discretion when it found it should not have granted summary judgment to Simon under Trial Rule 56(B).

If the issue of breach was not raised by MC Sports' motion for summary judgment, Simon argues, it was raised by Simon's brief in opposition to summary judgment wherein Simon asserted as an "Undisputed Fact" that Simon's lease to Dick's did not violate Section 24.23. We find this argument somewhat disingenuous, as Simon acknowledged to the trial court in its objection to MC Sports' motion to correct error: "Simon did not file a separate motion for summary judgment." (App. at 687.)

Nevertheless, Simon invites us to hold that the breach issue was before the court despite its failure to move for summary judgment. It cites *In re Garden & Turf*

---

8. As Simon notes, MC Sports' brief in support of its motion for summary judgment stated: "Simon effectively concedes that the lease with Dick's is a breach of its Lease with MC Sports." (App. at 38; see also App. at 40, 41–43.) We disagree with Simon's assertion that language "raised" the issue of breach for the purposes of MC Sports' motion for summary judgment on Simon's complaint. Instead, we see that language as a statement regarding the assumption the court should make when determining whether to grant summary judgment on the issue of remedies. In other words, the issue before the court at that point was: "Assuming Simon breached the lease, what remedies are available to MC Sports?"

*Supply Corp.,* 440 N.E.2d 710 (Ind.Ct.App. 1982), where we held:

> Although the document [plaintiff] filed was entitled "Response to Plaintiff's Motion for Summary Judgment in Favor of Plaintiff on Plaintiff's Complaint," it requested entry of summary judgment or claimed it was entitled thereto at six points in the body of its text. We find this is sufficient to constitute a motion for summary judgment within the meaning of T.R. 56(C).

*Id.* at 719.

We would agree with Simon regarding the implication of that language but for the fact Trial Rule 56(C) no longer contains the language on which that holding was premised. Prior to January 1, 1991, Trial Rule 56(C) provided, in pertinent part: "Summary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the affidavits and testimony offered *upon the matters placed in issue by the pleadings or such evidence.*" (Emphasis added.) The rule no longer includes such language, providing instead: "Summary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the evidentiary matter designated to the court." Because Simon directs us to no other language in the current version of Trial Rule 56(C) that would permit a trial court to decide "matters placed in issue by the ... evidence" without those matters having been first placed in issue by a motion, we decline to follow *Garden & Turf Supply.*

Simon further asserts we should find MC Sports waived its arguments regarding the breach issue because "[a] party who neglects to avail himself of a valid objection to a proceeding and stands by or participates therein until an adverse result is reached must bear the consequences." *Wisconics Engineering, Inc. v. Fisher,* 466 N.E.2d 745, 753 (Ind.Ct.App.1984), *reh'g denied, trans. denied.* However, MC Sports did object to Simon's attempt to raise the issue of breach:

> On October 15, 2004, Simon filed a Supplemental Designation and Submission of the Affidavit of Joseph Queri claiming that one of the issues raised in the motion for summary judgment is whether Simon breached Section 24.23 of the Lease. But the only issue in this motion is whether MC Sports is entitled to summary judgment on Simon's claim for declaratory relief. In its Complaint, Simon asks this Court to declare that MC Sports' remedies for any violation of Section 24.23 of the Lease are limited to those agreed to by the parties in that section of the Lease. (Compl., at 3.) The issue of whether Simon has violated Section 24.23 of the Lease is not addressed in Simon's Complaint and is not, therefore, at issue in this motion.

(App. at 633 n. 1.) Because MC Sports objected to Simon's attempt to argue an issue that was not properly before the court pursuant to MC Sports' motion, it had not stood idly by waiting for the court to render a decision prior to lodging its objection.

To place the issue of breach before the trial court, Simon should have filed a motion for summary judgment raising the issue. Because it did not do so, we cannot say the trial court abused its discretion when it granted MC Sports' motion to correct error.

## 2. *MC Sports' Cross–Appeal Regarding Remedies*

MC Sports challenges the summary judgment for Simon on the issue of what remedies are available to MC Sports if

Simon breaches Section 24.23 of the Lease.[9] "The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law." *Branham v. Celadon Trucking Services, Inc.*, 744 N.E.2d 514, 521 (Ind.Ct. App.2001), *trans. denied* 753 N.E.2d 16 (Ind.2001); *see also* Ind. Trial Rule 56(C). A factual issue is material if it bears on the ultimate resolution of a relevant issue. *Bushong v. Williamson*, 790 N.E.2d 467, 474 (Ind.2003). "A factual issue is genuine if it is not capable of being conclusively foreclosed by reference to undisputed facts." *Id.*

We review the trial court's grant of summary judgment applying the same standard the trial court applied. *Branham*, 744 N.E.2d at 521. We must resolve any doubts about facts, or the inferences therefrom, in the light most favorable to the nonmoving party. *Id.* However, we may affirm the summary judgment on any theory supported by the evidence designated to the trial court. *Id.* Once the movant sets forth evidence to demonstrate no factual issues exist, the burden shifts to the nonmoving party to produce evidence demonstrating an issue of fact exists. *Id.* The nonmoving party may not simply rest on the pleadings; he must have designated facts to the trial court. *Id.*

 The appellant has the burden to prove the trial court erred when it determined there were no issues of material fact and the appellee was entitled to judgment as a matter of law. *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind.Ct.App.2000). Where, as here, the trial court entered findings of fact in its summary judgment order, those findings do not control us. *City of Gary v. Ind. Bell Telephone Co.*, 732 N.E.2d 149, 153

(Ind.2000), *reh'g denied.* Rather, we may use those findings to aid our interpretation of the trial court's decision. *Id.* Although the non-movant bears the burden of demonstrating the summary judgment was erroneous, we carefully review the trial court's decision to ensure that the non-movant was not wrongly denied his or her day in court. *Kennedy v. Guess, Inc.*, 806 N.E.2d 776, 779 (Ind.2004), *reh'g denied.*

 Interpretation of the language in a contract is a question of law especially suited for summary judgment proceedings. *Art Country Squire, L.L.C. v. Inland Mortgage. Corp.*, 745 N.E.2d 885, 889 (Ind. Ct.App.2001). We review questions of law *de novo*, and therefore we give no deference to the trial court's interpretation. *Id.* Our goal is to give effect to the intent of the parties as expressed within the four corners of the document. *Id.* We may not construe unambiguous language to give it anything other than its clear, obvious meaning, and we may not add provisions to a contract that were not placed there by the parties. *Id.* Rather, we determine the meaning of a contract from an examination of all of its provisions, without giving special emphasis to any word, phrase or paragraph. *Id.*

 "A contract term is not ambiguous merely because the parties disagree about the term's meaning." *Roy A. Miller & Sons, Inc. v. Industrial Hardwoods Corp.*, 775 N.E.2d 1168, 1173 (Ind.Ct.App. 2002). Rather, language is ambiguous only if reasonable people could come to different conclusions about its meaning. *Id.* Ambiguity in a contract may be one of two types: patent or latent. Patent ambiguity is "apparent on the face of the instrument and arises from an inconsistency or inherent uncertainty of language used so that it either conveys no definite mean-

9. MC Sports' motion to correct error did not address this issue.

ing or a confused meaning." *Oxford Financial Group, Ltd. v. Evans,* 795 N.E.2d 1135, 1143 (Ind.Ct.App.2003). Latent ambiguity, on the other hand, "arises only upon attempting to implement the contract." *Id.* at 1144. Patent ambiguity presents a pure question of law, *id.* at 1143, while the fact finder resolves latent ambiguity as a question of fact. *Id.* at 1144. Accordingly, extrinsic evidence [10] is admissible to explain the meaning of latent ambiguity, *id.,* but is not admissible to explain patent ambiguity. *Id.* at 1143.

 The relevant language in Section 24.23 provides:

> If Landlord violates or suffers the violation of this paragraph and fails to cure such violation within ninety (90) days after receipt of Tenant's notice, then Tenant shall have the right to pay in lieu of Minimum Rent, Percentage Rent and additional rent (except taxes and utilities) the lesser of an amount equal to (i) the Minimum Annual Rent due and payable under this Lease or (ii) four percent (4%) of Adjusted Gross Sales until the Competing Business ceases operation in the Center.

(App. at 27.) The court held MC Sports' remedies for any violation by Simon are limited to the reduced rent explained in that Section.

MC Sports argues the language of the contract in light of Indiana law demonstrates the trial court should have granted summary judgment to MC Sports. We disagree.

First, MC Sports points to specific language in Section 3.3 of the Lease, which states: "All remedies in this Lease or at

law provided shall be cumulative and not exclusive." (*Id.* at 113.) MC Sports asserts that language "could not be more clear," (Appellee's Br. at 17), and entitles MC Sports to summary judgment regarding the remedies available under Section 24.23.

Section 3.3 provides:

*Section 3.3. Failure of Tenant to Perform.*

> Because of the difficulty or impossibility of determining Landlord's damages resulting from Tenant's failure to open for business fully fixtured, stocked and staffed on the Commencement Date, including, but not limited to, damages from loss of Percentage Rent (hereinafter defined) from Tenant and percentage rent from other tenants, diminished saleability, leasability, mortgageability or economic value of the Center or Landlord's Tract, if Tenant fails to commence Tenant's Work within the time provided above and proceed with the same diligently, or to open for business fully fixtured, stocked and staffed on or before diligently, or to open for business fully fixtured, stocked and staffed on or before the Commencement Date or to perform any of its obligations to be performed prior to the Required Completion Date, *beyond any applicable cure or grace period* Landlord may, *upon ten (10) days prior written notice to Tenant,* in addition to the right to exercise any other remedies and rights herein or at law provided, collect rent from the Commencement Date in an amount equal to the Minimum Annual Rent (hereinafter defined) and other additional rent and other amounts payable by

---

10. Extrinsic evidence is "evidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties or the circumstances surrounding the agreement." *CWE Concrete Const., Inc. v. First Nat. Bank,* 814 N.E.2d 720, 724 (Ind.Ct. App.2004), *trans. denied* 831 N.E.2d 739 (Ind. 2005).

Tenant hereunder, and, in addition thereto, an amount equal to *ten* percent *(10%)* of 1/365ths of the Minimum Annual Rent for each day that Tenant has failed to open for business on and after the Commencement Date, which latter amount shall be in lieu of Percentage Rent that might have been earned had Tenant opened in timely fashion. In addition, Landlord may terminate this Lease, in which event Landlord shall have the right to recover all expenses incurred by Landlord pursuant to this section, plus the cost of any alterations or repairs which Landlord in its sole discretion deems advisable to relet the Premises. In the event that Tenant fails to make timely submission of Tenant's Plans as provided in this Lease, then Landlord shall have the right, in addition to its other rights and remedies as herein provided, to collect from Tenant a sum which shall be One Hundred and 00/100 Dollars ($100.00) per calendar day for each day that Tenant's Plans are not so submitted. All remedies in this Lease or at law provided shall be cumulative and not exclusive.

(App. at 116) (italics in original).

Simon asserts because Section 3.3 covers different issues than addressed by Section 24.23, we should not take that one sentence out of Section 3.3 and graft it onto Section 24.23. The language used in the remaining sections of the contract leads us to agree with Simon.

Numerous sections of the Lease provide specific remedies for breach of those specific sections, but also state a party may exercise any other remedies or other rights. For example, Section 4.3 of the lease provides: "If Tenant fails to prepare and deliver any statement of Gross Sales ... then Landlord shall have the right, in addition to the other rights and remedies set forth in this Lease, to estimate Tenant's Adjusted Gross Sales for any non-reported period and bill Tenant's Percentage Rent accordingly." (*Id.* at 204.) Similar language is used in Section 7.2 ("Landlord reserves the right, in addition to all other rights and remedies available to Landlord, to cut off and discontinue ... any utilities ....") (*id.* at 208), Section 8.2 (providing liquidated damages for breach of section, "[i]n addition to all other remedies") (*id.* at 208–09), Section 18.1 ("Landlord, in addition to all other rights or remedies it may have, shall have the right thereupon to at any time thereafter to terminate this Lease ....") (*id.* at 219), Section 18.2 ("If Landlord terminates this Lease for any breach, or otherwise takes any action on account of Tenant's breach or default hereunder, in addition to any other remedies it may have, it may recover from Tenant all damages incurred incurred by reason of such breach or default, including [specific items listed].") (*id.*), Section 18.6 ("The rights, remedies and liabilities of Landlord and Tenant set forth in this Section 18.6 shall be in addition to those which may now or hereafter be accorded, or imposed upon, Landlord and Tenant by the [Bankruptcy] Code.") (*id.* at 221), and Section 20.2 ("In addition to all rights or remedies of Landlord under this Lease and the law, including the right to a judicial foreclosure, Landlord shall have all the rights and remedies of a secured party under the Uniform Commercial Code of the State where the Center is located.") (*id.* at 222).

"The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases or paragraphs read alone." *Indiana–American Water Co., Inc. v. Town of Seelyville,* 698 N.E.2d 1255, 1259 (Ind.Ct.App.1998). If the parties had intended Section 24.23 to include other rights and remedies in addition to

the reduced rent, other sections of the Lease indicate the parties knew how to include such language.

Moreover, like Section 24.23, Sections 8.1 and 8.7 of the Lease do not include language regarding "other rights" and "other remedies":

*Section 8.1. Use of Premises.*

The Premises shall be occupied and used by Tenant solely for the Permitted Use set forth in Article I. *Except as provided in Section 24.23 of this Lease* Tenant expressly understands and acknowledges that its Permitted Use is nonexclusive, and that other tenants may sell items identical or similar to those sold by Tenant. Tenant hereby warrants that it has the full and unfettered right to use the Trade Name, set forth in Article I, for the entire Lease Term and that such use will not in any way infringe on the rights of others. The Permitted Use is a material consideration to Tenant entering into this Lease so as to permit Landlord to maintain an appropriate tenant mix, or balance, both to the quality and quantity of sales, within the Center in order to achieve the maximum Gross Sales for all tenants and to assure the continued operation of a full service regional shopping center development. *Tenant acknowledges and agrees that fifty-two percent (52%) of the Store Floor Area shall be devoted to the sale and display of hardlines or sporting goods. In the event Tenant fails to use fifty-two percent (52%) of the Store Floor Area for the above purpose Tenant shall be in default under this Lease. If Tenant fails to cure such default within thirty (30) days of Landlord's written notice of such default, then Tenant's Minimum Annual Rent shall increase by one hundred percent (100%) until such time that fifty-two percent (52%) of the Store*

*Floor Area in the Premises is devoted to the sale and display of hardlines or sporting goods.*

(App. at 121) (emphases original).

*Section 8.7. Other Operations.*

If during the *first five (5) full Lease Years of the* Lease Term *or any time thereafter Tenant is open and operating in the Premises,* Tenant directly or indirectly operates, manages or has any interest whatsoever in any other store or business operated for a purpose or business similar to or in competition with all or part of the business permitted under Section 1.1 hereof within *two (2)* miles of any boundary line of the Center, it will injure Landlord's ability and right to receive Percentage Rent (such ability and right being a major consideration for this Lease and the construction of the Center). Accordingly, if Tenant operates, manages or has such interest in any such store or business within such area, 100% of all sales made from any such other store or business shall be included in the computation of Gross Sales and Adjusted Gross Sales for the purpose of determining Percentage Rent under this Lease as though said Gross Sales and Adjusted Gross Sales had actually been made at, in or from the Premises. Landlord shall have all rights of inspection of books and records with respect to such stores or businesses as it has with respect to the Premises; and Tenant shall furnish to Landlord such reports with respect to Gross Sales and Adjusted Gross Sales from such other store or business as it is herein required to furnish with respect to the Premises.

(*Id.* at 124) (emphases original).

Simon notes Section 3.3 must make "all remedies" available in Sections 8.1, 8.7, and 24.23, or it does not make additional

remedies available in any of them. Because "[t]he meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases or paragraphs read alone," *Indiana–American Water Co.*, 698 N.E.2d at 1259, we agree the language in Section 3.3 must modify all three of those other sections or none of them.

Because the ambiguity at issue arises only upon an attempt to implement the contract, it is a latent ambiguity and we may consider extrinsic evidence when determining what the parties intended. MC Sports' representative testified if MC Sports violates Section 8.1 or Section 8.7, Simon has no remedy available except as specifically set out in each Section. (App. at 548, 552.) In light of that admission, we decline MC Sports' invitation to apply the language from Section 3.3 to modify only Section 24.23.

Finally, MC Sports asserts the summary judgment for Simon on the remedy issue violated Indiana law regarding the effect of a remedy clause in a contract or lease. Section 24.23 provides in the event of a breach "Tenant shall have the right to pay [reduced rent]." (*Id.* at 139.) MC Sports claims the permissive language of that clause could not have, as a matter of law, eliminated other remedies MC Sports may have had.

 "A contract which excludes some remedy given by law should be so definite and positive in its terms as to show the clear intention of the parties to do so." *Strauss v. Yeager*, 48 Ind.App. 448, 93 N.E. 877, 882 (1911). Therefore, even if a lease provides a specific remedy, a landlord has not been deprived "of any rights given by law, unless the terms thereof expressly restricted the parties to such specified remedy." *Whitcomb v. Indianapolis Traction & Terminal Co.*, 64 Ind.App. 605, 116 N.E. 444, 445 (1917). Because Section 24.23 provides MC Sports "shall have the right" to one kind of remedy, (App. at 139), MC Sports claims the trial court's order "turns [the law] on its head," (Appellee/Cross–Appellant's Br. at 22), and "effectively requires the Lease to clearly express the intent that specified remedies be cumulative." (*Id.*)

 MC Sports' request that we apply Indiana Law to Section 24.23 of its Lease is an implicit request that we ignore the remaining sections of the Lease as we construe this one section. Rules of contract interpretation require us to read the contract as a whole and do not permit us to interpret sections in a manner that would cause them to conflict. *See Whitaker v. Brunner*, 814 N.E.2d 288, 294 (Ind. Ct.App.2004) ("We must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict."), *trans. denied* 831 N.E.2d 738 (Ind.2005). Accordingly, we decline MC Sports' invitation to read into Section 24.23 the availability of additional remedies.

## CONCLUSION

Because Simon's brief in opposition to MC Sports' motion for summary judgment was insufficient to place the issue of breach before the trial court, the trial court did not abuse its discretion when it granted MC Sports' motion to correct error. Nor did it err when it granted summary judgment to Simon, because reduced rent is the only remedy available for a breach of Section 24.23. Therefore, we affirm and remand for further proceedings consistent with this opinion.

Affirmed and remanded.

ROBB, J., concurs.

KIRSCH, C.J., concurs in part and dissents in part with separate opinion.

KIRSCH, Chief Judge, concurring in part and dissenting in part.

I fully concur with the majority's holding that the trial court did not err in granting Michigan Sporting Goods' Motion to Correct Error, but I respectfully dissent from its holding that the remedy set out in Section 24.23 of the lease is the exclusive remedy for breach of that section.

To me, the provisions of the section are clear and unambiguous. It provides that if Simon violates the section, the tenant "shall have the right" to pay reduced rent. There is no statement that reduced rent is the "only," the "sole" or the "exclusive" remedy for such breach. Nothing in the section, nor elsewhere in the lease, limits the rights or remedies of Michigan Sporting Goods regarding such a breach in any way.

Indiana law requires that any limitation on remedies "should be definite and positive in its terms as to show the clear intention of the parties to do so." *Strauss v. Yeager*, 48 Ind.App. 448, 93 N.E. 877, 882 (1911). The fact that a specific remedy is set forth, as here, does not deprive a party of other remedies "unless the terms thereof expressly restricted the parties to such specified remedy." *Whitcomb v. Indianapolis Traction & Terminal Co.*, 64 Ind.App. 605, 116 N.E. 444, 445 (1917).

Here, there is no "definite or positive" term that the remedy is exclusive. The fact that other sections set forth a remedy and state that such a remedy is in addition to other remedies at law is of no moment, nor is the lack of such language in the section at issue. Indeed, under the law of this state, such language is surplusage. Further, because I believe the language of the section is clear and unambiguous (whether patent or latent), extrinsic evidence is not admissible.

The parties to this lease are sophisticated, commercial entities, dealing at arms length, represented by competent counsel. They clearly had the opportunity and ability to set out explicitly any limitation on remedies. They did not.

I would affirm the trial court's order granting the Motion to Correct Errors and reverse its order that the remedy set out in Section 24.23 of the lease is an exclusive remedy.