Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 19 2013, 5:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**THOMAS G. BURROUGHS**
Katz & Korin, PC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**MARK SMALL**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JERRY CORBIER and STEPHANIE CORBIER, | ) ) ) | |
| Appellants/Plaintiffs, | ) ) | |
| vs. | ) ) | No. 29A04-1210-SC-545 |
| WILLIAM B. NOURSE and TERESA L. NOURSE, | ) ) ) | |
| Appellees/Defendants. | ) ) | |

APPEAL FROM THE HAMILTON SUPERIOR SMALL CLAIMS COURT
The Honorable Gail Z. Bardach, Judge
The Honorable David K. Najjar, Magistrate
Cause No. 29D06-1206-SC-5959

**August 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Jerry and Stephanie Corbier ("the Corbiers") filed a small-claims action to evict William and Teresa Nourse ("the Nourses") from the home that they were leasing. The Corbiers argued that the Nourses breached and repudiated the lease by failing to make the lease payments on time and in a reasonable manner and by deducting maintenance expenses from their monthly lease payment. The trial court held that the Nourses were not in breach of the lease and held in their favor. As a result of the holding in their favor, the Nourses were awarded reasonable attorneys' fees as well. Finding that the Nourses' actions were in compliance with the lease terms and not unreasonable, and that they were entitled to reasonable attorneys' fees, we affirm.

## Facts and Procedural History

On March 31, 2011, the Nourses entered into a three-year lease contract to rent a house in Carmel from the Corbiers for $3000 per month. T & H Realty ("T & H"), the Corbiers' rental agent, found the Nourses as tenants. However, T & H resigned as property manager, claiming that the Corbiers breached the agreement that they had. Steven Bauer acted as the rental agent for a time, but then Mr. Corbier took over the job. The lease terms, which were never modified, required that rent be paid by the first of every month to T & H through the Tenant Portal at www.therealtyinc.com. If the rent was not received by the fifth of the month, a late charge was assessed, and if the rent was not received by the seventh of the month, the Landlord could ask the Tenant to vacate or begin eviction proceedings. Pl. Ex. 2.

After T & H resigned and Steven Bauer was no longer the property manager, the written lease was never changed, but the Corbiers, who lived in Phoenix, Arizona, requested the Nourses pay the rent directly into the Corbiers' bank account at Bank of America. Mr. Nourse testified, however, that the Patriot Act does not allow direct transfers of that large of an amount of money unless the recipient bank has a location in the same state as the sending bank. Because of this, Mr. Nourse testified that his bank would not make the requested transfer to the Corbiers' account at Bank of America, so he was unable to send the rent money in that way. Instead, he sent a check to the Corbiers in Arizona via certified mail. With the exception of February 2012, when the fifth fell on a Sunday, every rent check was shown processed by the Phoenix postal department by the fifth of the month. Pl. Ex. 4.

The lease terms also stated that the Corbiers would "fund any maintenance requirement that exceeds $25." Pl. Ex. 2. The Nourses had to make multiple repairs to the property, and those repairs were not initially reimbursed by the Corbiers. The Nourses filed a lawsuit, seeking, among other things, the cost of the repairs, and they were awarded a judgment of $6087 on February 28, 2012. After the lawsuit, when they had to make a repair, the Nourses deducted the amount of the repair from their rent payment and attached the appropriate invoices to the rent check sent to the Corbiers. *See* Pl. Ex. 10-11. The Corbiers did not object to this system until the filing of the present lawsuit.

On June 8, 2012, the Corbiers filed an eviction complaint in small-claims court contending the Nourses owed past-due rent and had breached the lease agreement.

3

Appellant's App. p. 12. The Nourses filed a counter-claim to authorize the rent deductions made for repairs and to recover attorneys' fees. A bench trial was held, and the trial court found that all rent payments were made in a reasonable manner and on time, and that the method of deducting repair amounts from the monthly rent was also reasonable. Judgment was entered in favor of the Nourses on all issues, and each party was ordered to pay its own attorneys' fees. The Nourses filed a motion to reconsider on the issue of attorneys' fees, and the trial court entered judgment in favor of the Nourses for their attorneys' fees in the amount of $3306.

The Corbiers now appeal.

**Discussion and Decision**

Judgments in small-claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Under Indiana Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1067 (Ind. 2006). This "deferential standard of review is particularly important in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." *Id.* at 1067-68 (quotation omitted). But this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction. *Id.* at 1068.

The Corbiers contend that the trial court's judgment is clearly erroneous because the Nourses breached and repudiated the lease by not paying their rent on time in a reasonable manner and by deducting maintenance expenses from the monthly rent amount. The Corbiers also contend that the Nourses were not entitled to reasonable attorneys' fees. We disagree.

### I. Method of Payments

The lease contract indicated that rent payments were to be made to T & H through the tenant portal at www.therealtyinc.com. However, T & H resigned as the property manager, so this provision regarding rent payment became impossible, creating a latent ambiguity in the lease terms. A latent ambiguity "arises only upon attempting to implement the contract." *Simon Prop. Group, L.P. v. Mich. Sporting Goods Distrib., Inc.*, 837 N.E.2d 1058, 1071 (Ind. Ct. App. 2005), *trans. denied*. When a contract contains a latent ambiguity, it creates a question of fact that is to be resolved by the fact-finder, and extrinsic evidence may be used to determine the meaning of the ambiguity. *Id.* Any ambiguities should also be construed against the maker of the contract. *MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004).

In this case, the trial court determined there was a latent ambiguity in the contract once T & H resigned as the property manager. The contract was not modified to adjust the way that payments were to be made once Mr. Corbier took over as property manager, and there was no alternative method of payment indicated if T & H were to no longer be the property manager, so the Nourses sent their rent checks directly to the Corbiers via

5

certified mail. The trial court found this to be a reasonable method of payment that was not contrary to any lease term. Additionally, the Corbiers did not object to this method of payment before filing the eviction complaint, and each payment was deemed paid in a timely manner, that is, before the fifth of the month when the Corbiers could have assessed late fees.[1] Appellant's App. p. 6. Therefore, there was no evidence presented that the method the Nourses used to pay their monthly rent was unreasonable, that there were outstanding late fees owed to the Corbiers, or that this was a repudiation of the lease indicating that the Nourses would not comply with the lease terms. We cannot say that the trial court's judgment on this issue was clearly erroneous.

## II. Maintenance Deductions

The Corbiers also contend that the trial court erred in finding that deducting maintenance expenses from the monthly rent payment was reasonable. We again disagree.

The terms of the lease indicated that the Corbiers would be responsible for any maintenance expense that exceeded \$25.[2] *Id.* at 64. However, the lease did not indicate how reimbursements were to be made to the Nourses if they had to make the initial payment, so deducting the maintenance requirements was not contrary to any lease term. *Id.* at 7. The Nourses had to bring an action against the Corbiers to be reimbursed for

---

[1] The February 2012 rent payment was received on the sixth of the month because the fifth fell on a Sunday when there was no mail service. The trial court determined that this was not a late payment. Appellant's App. p. 8.

[2] The Corbiers contend that the Nourses are responsible for the first \$25 of each maintenance payment, while the Nourses deducted the total amount of any maintenance payment that exceeded \$25 from their rent check. Since the parties reasonably differed as to their interpretation of this lease term, and any ambiguity in the contract is construed against the maker, *MPACT Constr. Grp., LLC*, 802 N.E.2d at 910, we cannot say that the Nourses' course of action was contrary to the lease terms.

previous maintenance payments, so the trial court found that deducting the repair amounts from their monthly rent was a reasonable solution to have the Corbiers fund any maintenance requirement. The trial court also found that although this method of reimbursement was reasonable, the Corbiers objected to this method in the lawsuit, so the Nourses were put on notice that this was no longer an acceptable practice going forward.

However, the Corbiers failed to object to this method in any way before the filing of the lawsuit, and there is no evidence that the Nourses' conduct was a breach or repudiation of the lease terms. We therefore cannot say that the trial court's judgment on this issue was clearly erroneous either.

### III. Attorneys' Fees

Finally, the Corbiers contend that the trial court erred in awarding reasonable attorneys' fees to the Nourses.[3] However, the terms of the lease explicitly state: "In any action or legal proceeding to enforce any part of this Agreement, the prevailing party shall recover reasonable attorney fees and court costs." *Id.* at 20. The trial court found that since the lease terms were the basis for this action, the prevailing party was entitled to reasonable attorneys' fees. *Id.* at 11. As the lease term concerning attorneys' fees is clear on its face and the Nourses were the prevailing party, we cannot say that the trial court erred in awarding reasonable attorneys' fees to the Nourses.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.

---

[3] The Corbiers contest only the requirement that they pay the attorneys' fees, not the reasonableness of such fees. Appellant's Br. p. 30.

7