**Lawrence BRANHAM and Becky Branham, Appellants,**

v.

**CELADON TRUCKING SERVICES, INC. and Bruce Edwards, Appellees.**

No. 49A02–0003–CV–196.

Court of Appeals of Indiana.

Feb. 20, 2001.

---

Morris L. Klapper, G.R. Parish, Jr., Klapper Isaac & Parish, Indianapolis, for Appellants.

James H. Hanson, Lynne D. Lidke, A. Jack Finklea, Scopelitis, Garvin, Light & Hanson, Indianapolis, for Celadon Trucking Services, Inc.

Ronald W. Frazier, Frazier Law Office, Thomas M. Weinland, Indianapolis, for Bruce Edwards.

## OPINION

KIRSCH, Judge.

"The law does not provide a remedy for every annoyance that occurs in everyday life. Many things which are distressing or may be lacking in propriety or good taste are not actionable."

*Kelley v. Post Publishing Company,* 327 Mass. 275, 98 N.E.2d 286, 287 (1951) (quoted in *Lee v. Weston,* 402 N.E.2d 23, 30 n. 2 (Ind.Ct.App.1980)). These words guide our examination of this consolidated appeal, in which Lawrence and Becky Branham[1] appeal from the trial court's grant of summary judgment on their claim against Celadon Trucking Services, Inc. (Celadon) and Bruce Edwards for Edwards's negligent supervision and Celadon and Edwards appeal the denial of summary judgment on the Branhams' remaining claims. We address the following issues:

I. Whether the Branhams' claims are barred by the exclusivity provisions of the Indiana Worker's Compensation Act.

II. Whether the Branhams' designation of evidence in opposition to the motion for summary judgment was sufficient and whether a genuine issue of material fact precludes entry of summary judgment on Branham's claims for libel, intentional infliction of emotional distress, and invasion of privacy.

III. Whether summary judgment should be granted on the Branhams' claims for punitive damages and loss of consortium.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Branham and Adam Deaton worked as mechanics for Celadon. Edwards was the lead mechanic and their supervisor. Celadon employees received a thirty-minute lunch break and two fifteen-minute breaks during their shifts. On March 6, 1999, Branham fell asleep in a chair in the employee break room while on his break.

---

1. We will refer to Lawrence Branham as "Branham" and Becky and Lawrence collec- tively as "the Branhams."

Deaton found him sleeping and asked Edwards to take a picture of them. Edwards retrieved an instant camera used by Celadon employees to photograph damaged trucks for insurance purposes. Standing beside the sleeping Branham, Deaton posed with his pants down, clad in his underwear with his hand held suggestively in front of his genital area. Edwards snapped the picture and then left it on the table in the break room. Deaton took the picture and showed it to other mechanics.

Other mechanics and employees began teasing Branham about the picture. Although Branham knew that his picture had been taken, he did not realize what the picture represented. After a couple of weeks, he complained to Edwards and asked Edwards to retrieve the picture. Edwards ordered Deaton to return the picture to Branham. When Branham saw the image, he became very upset. Meanwhile, Celadon's management learned of the picture. After an investigation, they suspended both Deaton and Edwards for a week without pay and demoted Edwards from lead mechanic to mechanic.

Branham, however, felt "like a laughing stock." He secured employment with another trucking firm and left his employment at Celadon. He and his wife, Becky, then filed suit against Celadon, Edwards, and Deaton. Their complaint stated claims for invasion of privacy, libel, intentional infliction of emotional distress, negligent supervision, and loss of consortium. Celadon filed a motion to dismiss the Branhams' complaint alleging that the trial court lacked jurisdiction because the claim was governed by the Indiana Worker's Compensation Act. The trial court denied this motion. Celadon and Edwards then moved for summary judgment on all claims. The trial court granted Edwards's motion for summary judgment on the negligent supervision claim and denied the motion on all other claims. All parties now appeal.

## DISCUSSION AND DECISION

### I. Exclusivity Provision of the Indiana Worker's Compensation Act

■ Celadon and Edwards first contend that the trial court lacked jurisdiction over the Branhams' suit because Branham claims a work-related injury, and the Indiana Worker's Compensation Act ("Act") gives exclusive jurisdiction of worker's compensation claims to the Worker's Compensation Board.

■ A defense that the plaintiff's action is barred by the exclusivity provision of the Act is an attack on the trial court's subject matter jurisdiction. *U.S. Metalsource Corp. v. Simpson*, 649 N.E.2d 682, 684 (Ind.Ct.App.1995). Lack of subject matter jurisdiction is an affirmative defense which may be raised in the pleadings under Ind. Trial Rule 8(C) or on motion to dismiss for lack of jurisdiction under Ind. Trial Rule 12(B)(1). *Id.* Here, Celadon and Edwards filed a motion to dismiss the Branhams' claims.

■ In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court may resolve factual disputes. *Id.* In doing so, it may consider not only the complaint and motion, but also any affidavits or other evidence submitted. *Id.* Moreover, the court may weigh the evidence to determine the existence of the requisite jurisdictional facts. *Id.*

■ Once the defendant raises the issue of the exclusivity of the Act, the burden shifts to the employee to prove that the claim falls outside the scope of the Act. *Nowicki v. Cannon Steel Erection Co.*, 711 N.E.2d 536, 539 (Ind.Ct.App.1999), *trans. denied.* In meeting this burden, the plaintiff must adduce evidence supporting jurisdiction and not rely merely on the pleadings. *Foshee v. Shoney's, Inc.*, 637 N.E.2d 1277, 1280 (Ind.1994).

The Act provides for compensation to employees who receive injuries on the job. *See* IC 22-3-3-10. IC 22-3-2-6 states that the rights and remedies granted to an

employee under the statute exclude all other rights and remedies of such employee. However, by definition the Act applies only if the employee has received an injury. IC 22–3–6–1 provides: " 'Injury' and 'personal injury' mean only injury by accident arising out of and in the course of the employment and do not include a disease in any form except as it results from the injury."

Our supreme court examined this definition in *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1288–89 (Ind.1994). In that case, an employee brought suit against his former employer for damages resulting from harassment, racial slurs, battery, and his eventual discharge. The employer argued that the suit was barred by the exclusivity provision of the Act. The supreme court disagreed and held that Perry was entitled to bring a common law suit. *Id.*

The court examined the definition of personal injury in the statute and found that the term includes both physical injury and the different concepts of "disability" and "impairment." *Id.* The court noted that impairment is a term of art for purposes of worker's compensation that denotes an injured employee's loss of physical functions and disability refers to an injured employee's inability to work. *Id.* Further, the extent of a disability is determined by a worker's physical and mental fitness for various employment opportunities. *Id.*

In Perry's complaint, he alleged that he suffered embarrassment, humiliation, stress and paranoia, and that his character and reputation had been damaged. However, he had not sustained any physical injury or loss of physical function, and he was able and willing to continue to perform his duties at his employment. Thus, the court concluded that his injuries did not "constitute 'personal injury or death' as those terms are comprehended by the act." Therefore, Perry's claim was not barred by the exclusivity provision because the injuries at the heart of his complaint were not physical, and there was no impairment or disability at issue. *Id.*

Likewise, here, the heart of Branham's injury is not physical, but emotional. He alleges that the defendants' actions caused him embarrassment, humiliation, injury to his reputation, and extreme emotional distress. Further, in spite of his unwillingness to continue in his position at Celadon, Branham remained fit for other employment opportunities and in fact began employment at another company upon terminating his Celadon employment. Thus, there was no disability associated with his injury. Because Branham's injury was not physical and had no disabling quality, it is not a personal injury in the sense that the term is defined in the Act. The Act therefore does not apply to his claim. Thus, the trial court properly exercised subject mater jurisdiction over Branham's claims.

Nonetheless, Celadon directs us to *Hansen v. Von Duprin, Inc.*, 507 N.E.2d 573 (Ind.1987) for the proposition that purely emotional injuries are covered by the Act. In that case, the plaintiff experienced emotional difficulties after being shot by her husband. Her supervisor engaged in horseplay by repeatedly scaring her and making loud noises. After one such episode, she left work and was diagnosed with severe anxiety and depression which rendered her unable to work. *Id.*

The question actually before the court was whether, in the context of an employee making a worker's compensation claim, the plaintiff's injuries occurred by accident within the meaning of the Act. In concluding that the injuries were accidental and that the Act applied, the court stated that "[w]hether the injury is mental or physical, the determinative standard should be the same." *Id.* at 576. The court was not faced with the question of whether purely emotional injuries are personal injuries under the Act. Further, the plaintiff's emotional injury did have a disabling quality. Therefore, although the case was similar to *Perry* in that a purely emotional injury was involved, the disabling aspect of the

plaintiff's condition brought it within the Act's definition of injury. Thus, *Hansen* is distinguishable from the instant case. *See also Coble v. Joseph Motors. Inc.*, 695 N.E.2d 129 (Ind.Ct.App.1998), *trans. denied* (plaintiff's claim for intentional infliction of emotional distress was not barred by the Worker's Compensation Act); *Terrell v. Rowsey*, 647 N.E.2d 662, 665 (Ind. Ct.App.1995), *trans. denied* (action not barred by the exclusivity provision where there was no physical injury or loss of function, but plaintiff allegedly suffered defamation, embarrassment and loss of quiet enjoyment of his property when supervisor accused him of drinking alcohol in employer's parking lot).

Becky's claim is for loss of consortium. Because it is derivative in nature, a spouse's loss of consortium claim follows the same analysis. *See Wine–Settergren v. Lamey*, 716 N.E.2d 381, 390 (Ind.1999) (loss of consortium claim barred by exclusivity provision when spouse's negligence claim against employer is barred). Accordingly, because Branham's claim is not barred, neither is Becky's.

## II. Summary Judgment

The parties next challenge the trial court's summary judgment decision with regard to each claim. Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 104 (Ind.1997). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19, 23–24 (Ind.Ct.App.1999), *trans. denied* (2000); *Schrum v. Moskaluk*, 655 N.E.2d 561, 563–64 (Ind.Ct.App.1995), *trans. denied* (1996).

When reviewing a motion for summary judgment, this court applies the same standard utilized by the trial court, and we resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933 (Ind.Ct.App.1996). We will affirm a trial court's grant of summary judgment if it is sustainable on any theory found in the evidence designated to the trial court. *Id.*

When the movant's affidavits and other evidence demonstrate the lack of a genuine issue, the burden shifts to the opposing party to demonstrate the existence of a genuine issue for trial. *Carroll v. Jagoe Homes, Inc.*, 677 N.E.2d 612, 614 (Ind.Ct.App.1997), *trans. denied.* The non-moving party may not rest on the pleadings, but must set forth specific facts that show there is a genuine issue of material fact for trial. *Worrell*, 653 N.E.2d at 1056.

### A. Designation

Celadon argues that the Branhams' designation of evidence does not comply with the trial rules. Accordingly, they assert that their supporting materials cannot be considered and they therefore did not meet their burden of demonstrating that a genuine issue of material fact remains. Neither the trial court nor this court on appeal can look beyond the evidence specifically designated to the trial court. *Kissell v. Vanes*, 629 N.E.2d 878, 879–80 (Ind.Ct.App.1994). A proper designation consists of: (1) a list of the factual matters which are or are not in dispute, (2) supported by a specific designation to their location in the record, and (3) a brief synopsis of why those facts are material. *Id.*

Here, in a separately titled document, the Branhams provided the name of each document upon which they relied, along with page and line numbers. Although these references were not directly linked to the issue of fact to which they pertained, the designation was to specific por-

tions of the supporting materials. Because the rule does not specify how such a designation must be made, we deem this designation sufficient. We thus proceed to consider the merits of the trial court's decision on each of the Branhams' claims.

### B. Libel

Celadon and Edwards next assert that there is no genuine issue of material fact that precludes entry of summary judgment on the Branhams' claim for libel.

Libel is a species of defamation under Indiana law. *Indiana Ins. Co. v. North Vermillion Community Sch. Corp.*, 665 N.E.2d 630, 635 (Ind.Ct.App. 1996), *trans. denied.* Defamation is that which tends to injure reputation or to diminish esteem, respect, goodwill or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff. *Daugherty v. Allen*, 729 N.E.2d 228, 237 n. 8 (Ind.Ct.App.2000), *trans. dismissed; Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind.Ct.App.1999), *trans. denied* (2000). To maintain an action for defamation, a plaintiff must prove a communication with four elements: 1) defamatory imputation; 2) malice; 3) publication; and 4) damages, *Northern Indiana Public Serv. Co. v. Dabagia*, 721 N.E.2d 294, 301 (Ind.Ct.App.1999), *trans. denied* (2000); *Davidson*, 716 N.E.2d at 37; *Samm v. Great Dane Trailers*, 715 N.E.2d 420, 427 (Ind.Ct.App.1999), *trans. denied* (2000). A communication is defamatory per se under well-settled common law rules if it imputes: 1) criminal conduct; 2) a loathsome disease; 3) misconduct in a person's trade, profession, office, or occupation; or 4) sexual misconduct. *Levee v. Beeching*, 729 N.E.2d 215, 220 (Ind.Ct.App.2000); *Daugherty*, 729 N.E.2d at 237 n. 8 (citing RESTATE- MENT (SECOND) OF TORTS § 570 (1977); *Rambo v. Cohen*, 587 N.E.2d 140, 145 (Ind.Ct.App.1992), *trans. denied.*). In addition, the defamatory nature of the communication must appear without resort to extrinsic facts or circumstances. *Id.* The determination of whether a communica-

tion is defamatory is a question of law. *Id.; Dabagia*, 721 N.E.2d at 301; *Coachmen Industries, Inc. v. Dunn*, 719 N.E.2d 1271, 1277 (Ind.Ct.App.1999), *trans. denied* (2000). However, it may be presented to the jury as a question of fact if the communication is reasonably susceptible to either defamatory or non- defamatory interpretation. *Dabagia*, 721 N.E.2d at 301; *Coachmen Industries*, 719 N.E.2d at 1277; *Davidson*, 716 N.E.2d at 37.

In making such a determination, the communication is to be viewed in context and given its plain and natural meaning. *Dabagia*, 721 N.E.2d at 301; *Davidson*, 716 N.E.2d at 37. However, not all defamation is actionable. *Dabagia*, 721 N.E.2d at 301. True statements never give rise to liability for defamation. *Id.*

Here, Branham argued that the picture was defamatory per se because it showed him engaged in criminal sexual conduct. It does not. It depicts Branham sleeping and Deaton standing nearby. Branham himself testified that the picture depicted him asleep and admitted that he was actually asleep at the time. Thus, the picture was a truthful representation of him sleeping and therefore not defamatory as a matter of law.

Nonetheless, Branham argues that the picture, while not depicting criminal conduct outright, *implies* it. No reasonable inference of criminal conduct can be drawn from the picture which shows Branham clearly and obviously asleep. The defendants are entitled to summary judgment on Branham's defamation claim.

### C. Intentional Infliction of Emotional Distress

Celadon and Edwards next argue that there is no genuine issue of material fact that precludes entry of summary judgment on Branham's claim for intentional infliction of emotional distress. Intentional infliction of emotional distress is committed by "one who by extreme and

outrageous conduct intentionally or recklessly causes severe emotional distress to another ....” *Ledbetter v. Ross*, 725 N.E.2d 120, 123–24 (Ind.Ct.App.2000) (quoting *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind.1991)); *Pohle v. Cheatham*, 724 N.E.2d 655, 659 (Ind.Ct.App.2000). The intent to harm emotionally constitutes the basis of the tort. *Ledbetter*, 725 N.E.2d at 124; *Pohle*, 724 N.E.2d at 659; *Bradley v. Hall*, 720 N.E.2d 747, 752 (Ind.Ct.App. 1999). Thus, the elements of the tort are: a defendant (1) engages in extreme and outrageous conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another. *Bradley*, 720 N.E.2d at 752.

■ The requirements to prove this tort are “rigorous.” *Ledbetter*, 725 N.E.2d at 124 (quoting W. Page Keeton Et Al., Prosser and Keeton on the Law of Torts, § 12 at 61 (5th ed.1984)). Intentional infliction of emotional distress is found where conduct exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind. *Id.*

■■ In *Bradley*, 720 N.E.2d at 752–53, we quoted with approval the comment to Section 46 of the Restatement (Second) of Torts, which reads:

“d. Extreme and outrageous conduct. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average

member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' ”

*Id.* at 752–53 (Ind.Ct.App.1999) (quoting Restatement (Second) of Torts § 46). What constitutes extreme and outrageous conduct depends, in part, upon prevailing cultural norms and values. *Id.* In the appropriate case, the question can be decided as a matter of law. *See, e.g., Conwell v. Beatty*, 667 N.E.2d 768, 775–77 (Ind.Ct.App.1996) (no outrageous conduct where sheriff announced deputy's arrest at press conference and refused to assist deputy in completing retirement forms); *Gable v. Curtis*, 673 N.E.2d 805, 809–11 (Ind. Ct.App.1996) (no outrageous conduct where contractor's wife phoned purchaser seven times in one hour, screaming, threatening to repossess home and to come over, and stating repeatedly that the purchasers “would pay”).

■ Here, there was absolutely no evidence that anyone involved intended to harm Branham. Deaton testified that the picture was his idea and he thought it was a joke. He stated that he was laughing while posing because he thought it was funny and that he did not intend to hurt or humiliate Branham. He testified that everyone who viewed the photograph knew it was a joke; many of them laughed when they saw it.

Edwards likewise testified that the picture was a joke and that he did not intend to hurt Branham. He stated that the picture had no purpose beyond being a practical joke and that it was not meant to suggest anything. He testified that he recognized that it was in poor taste, but intended for Deaton to give the picture to Branham after he awoke. He did not think that the photograph would be hurtful or painful to Branham.

Branham testified that he had no reason to contradict the testimony of Edwards and Deaton that they had no intent to harm him. He testified that Deaton joked a lot and that he “cut up” with him. He

also testified that Edwards apologized and said it was meant as a joke, and that he seemed sincere.

There is no dispute that the defendants did not intend to harm Branham. Accordingly, the defendants are entitled to summary judgment on Branham's claim of intentional infliction of emotional distress.

### D. Invasion of Privacy

■ Celadon and Edwards next allege that there is no genuine issue of material fact that precludes entry of summary judgment on the Branhams' claim for invasion of privacy. The general tort known as invasion of privacy has four strands: (1) unreasonable intrusion upon the seclusion of another; (2) publicity that unreasonably places another in a false light before the public; (3) unreasonable publicity given to another's private life; and (4) appropriation of another's name or likeness. *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 684 (Ind. 1997). Of these, Branham claims intrusion into seclusion and false light publicity.

■ To establish a claim for invasion of privacy by intrusion, a plaintiff must demonstrate that there was an "intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home or other quarters ...." *Ledbetter*, 725 N.E.2d at 123 (quoting KEETON ET AL., § 117 at 854). To constitute tortious conduct, "the intrusion must be something which would be offensive or objectionable to a reasonable person." *Id.*

The parties debate whether such intrusion must be into the plaintiff's private physical space, or whether an instrusion into a person's emotion solace will suffice. *See Van Jelgerhuis v. Mercury Finance Co.*, 940 F.Supp. 1344 (S.D.Ind.1996). We recognize that our supreme court has stated: "[w]hen the invasion of a plaintiff's right to privacy takes the form of intrusion, it consists of an intrusion upon the plaintiff's physical solitude or seclusion as by invading his home or conducting an illegal search." *Cullison*, 570 N.E.2d at 31 (Ind.1991). We need not resolve the par-

ties' dispute, however, because under either analysis Branham's claim fails.

■ Branham testified that other people were in the break room when he fell asleep there and that employees used the area to eat their lunches. Thus, Deaton and Edwards did not intrude upon Branham's private physical space. Further, they also did not intrude upon Branham's emotional privacy. Branham was asleep when the picture was posed and taken. Therefore, he could not have suffered any emotional disturbance from it. Immediately after Edwards took the picture, Deaton told Branham about the picture. The evidence in the light most favorable to Branham suggests that other co-workers jokingly remarked upon the picture in the following days; however, this conduct cannot be imputed to Deaton and Edwards. Therefore, the defendants were entitled to summary judgment on Branham's claim of intrusion into seclusion.

■ Branham also asserts a claim for false light publicity. This tort is similar to defamation, but reaches different interests. *Near East Side Community Org. v. Hair*, 555 N.E.2d 1324, 1335 (Ind.Ct.App.1990). Defamation reaches injury to reputation; privacy actions involve injuries to emotions and mental suffering. *Id.*

Courts have looked to the Restatement for the express elements of the tort:

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

*St. John v. Town of Ellettsville*, 46 F.Supp.2d 834, 851 (S.D.Ind.1999) (quoting RESTATEMENT (SECOND) OF TORTS § 652E (1977)).

Here, Branham's claim fails for the same reason his defamation claim fails. That is, there is no false light because the picture is not false. The picture depicts him asleep with a partially clad co-worker standing beside him. He was, in fact, asleep with a partially clad co-worker beside him. The picture was accurate, not false, and the defendants are entitled to summary judgment on Branham's false light publicity claim.

### III. Punitive Damages and Loss of Consortium

Finally, Celadon and Edwards maintain that the trial court erred in denying their motion for summary judgment on Branham's claim for punitive damages because the uncontroverted evidence establishes that their conduct did not rise to the level required to sustain an award of punitive damages. Because we have held that the defendants are entitled to summary judgment on all of Branham's claims, his claim for punitive damages also must fail. The defendants are entitled to summary judgment on Branham's claim for punitive damages as well.

Similarly, with no host tort, Becky Branham's loss of consortium claim also fails.

We remand with instructions to enter summary judgment on all of the Branhams' claims.

Affirmed in part, reversed in part, and remanded.[2]

NAJAM, J., and VAIDIK, J., concur.

---

2. The Branhams argue that Celadon is liable for the acts of Edwards and Deaton through the doctrine of respondeat superior. Respondeat superior is a tort theory of vicarious liability through which an employer who is not liable because of his own acts can be held liable for the wrongful acts of his employee that are committed within the scope of employment. *Southport Little League v.*

*Vaughan,* 734 N.E.2d 261, 267–68 (Ind.Ct. App.2000). Because we hold that summary judgment should be granted on all counts against the individual defendants, we need not decide this issue. Similarly, because Deaton committed no actionable wrong, the quality of Edwards's supervision of him is also moot.