## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 02 2018, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alan W. Roles
Coleman, Roles & Associates, PLLC
Louisville, Kentucky

ATTORNEYS FOR APPELLEE

John W. Mervilde
Rick D. Meils
Meils Thompson Dietz & Berish
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Terry L. Balz,

*Appellant-Defendant,*

v.

Claims Professional
Representatives, LLC,

*Appellee-Plaintiff.*

August 2, 2018

Court of Appeals Case No.
10A04-1711-CT-2816

Appeal from the Clark Circuit
Court 1

The Honorable Marsha Owens
Howser, Special Judge

Trial Court Cause No.
10C01-1306-CT-091

**Barnes, Senior Judge.**

## Case Summary

[1] Terry L. Balz appeals from the grant of summary judgment in favor of Claims Professional Representatives, LLC ("CPR"). We affirm.

## Issue

The sole issue before us is whether genuine issues of material fact precluded entry of summary judgment in favor of CPR.

## Facts

On January 8, 2018, Balz's home ("the premises"), located in Clark County, was destroyed by fire and deemed a complete loss. Balz suffered serious injuries in the fire. At the time, the premises were insured under a homeowners' insurance policy ("Policy") issued by United Farm Family Mutual Insurance Company ("Farm Bureau"). The Policy included the following "Physical Damage Coverages": $123,724 for the "Dwelling"; $12,372 for "Other Structures"; $61,900 for "Personal Property"; and $24,700 for "Loss of Use." App. Vol. II p. 35. The "functional replacement cost loss settlement" endorsement of the Policy states, in part:

(1) "If, at the time of loss[ ]

. . .

(b) You contract for repair or replacement of the damaged building for the same use, within 180 days of the damage unless we otherwise agree; we will pay, after application of deductible, the lesser of the following amounts:

(a) [the policy limits applicable to the building]; or

(b) "[t]he necessary amount actually spent to repair or replace the damaged building on a "functional replacement cost" basis. . . . .

*Id*. at 91.

[4]     On or about January 11, 2010, Balz received the first of three letters from CPR, a public adjusting company, seeking to represent him in his claim negotiations with Farm Bureau. Balz subsequently executed a "Limited Authority Authorization & Assignment" agreement with CPR on or about February 12, 2010, wherein he gave CPR the right to "prepare and present" his claim to Farm Bureau; instructed Farm Bureau to "recognize [CPR] as a party in interest and [to] discuss limit of coverage and/or value(s) of the aforementioned loss(es) with [CPR]"; authorized Farm Bureau to release all insurance claim records to CPR; provided written notice to Farm Bureau that CPR's agent, Lisa VanHimbergen, would "develop, present and negotiate" on his behalf; and agreed to pay CPR "10% of the amount of the settlement, judgment, or award proceeds, when recovered . . . ." App. Vol. III pp. 106, 117. Balz contends, and CPR disputes, that by executing the agreement with CPR, he relinquished his right to communicate with Farm Bureau directly and was foreclosed from doing so.

[5]     Before the fire, Balz, who was skilled in construction, had purchased materials to remodel his house. After the fire, he believed that he could rebuild the house—an approximately $60,000 repair—for approximately $35,000, if he provided some labor himself and hired subcontractors only for work that he

could not complete himself. He asked VanHimbergen to relay his request to Farm Bureau.

[6] CPR counters that, by insisting on serving as the contractor responsible for performing the repairs and "demand[ing] that the money be paid directly to him," Balz refused to comply with the Policy provision requiring him to "to contract for repair or replacement of the damaged building" and, thereby, forfeited recovery for functional replacement costs. App. Vol. II p. 10.

[7] VanHimbergen presented Balz's insurance claim to Farm Bureau, which agreed to pay the entire limits under the policy to or on behalf of Balz, including functional replacement costs of $34,277.46. App. Vol. II p. 10. On or about July 7, 2010, Farm Bureau paid full policy limits to CPR, but did not pay functional replacement costs. CPR collected its fee in the amount of $19,572.40 and paid the remaining monies to Balz.

[8] On June 25, 2013, Balz sued CPR for breach of contract, breach of the duty of good faith and fair dealing, fraud in the inducement, constructive fraud, negligent misrepresentation, criminal conversion, tortious conversion, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages. In his complaint, Balz alleged that CPR: (1) fraudulently induced his execution of the representation agreement through express and implied promises "made to lure [him] into executing the [agreement]"; (2) failed to perform its claims processing duties; (3) failed to collect functional replacement cost insurance proceeds owed to him in the

amount of $34,277.46; (4) wrongfully collected a fee of $19,572.40; and (5) allowed the statute of limitations to run, resulting in Balz forfeiting his opportunity to recover insurance benefits for functional replacement costs. App. Vol. III p. 172.

[9] On December 12, 2016, CPR moved for summary judgment. CPR's designated materials included a deposition of Balz, taken on November 19, 2015; and the deposition of VanHimbergen, taken on October 25, 2016. The trial court conducted a hearing on CPR's motion for summary judgment on September 25, 2017. It entered summary judgment in CPR's favor on October 30, 2017. The trial court's order provided, in part, as follows:

> 3.      That on or about February 12, 2010, CPR and Balz entered into a contract wherein CPR agreed "to render such services to the insured (Balz); to prepare and present insureds [sic] claim for loss and damage caused" by fire on January 8, 2010. In exchange, Balz agreed to pay "CPR for services promised a sum of 10% of the amount of settlement."

> 4.      That CPR presented Balz's claim to Balz's insurer, Indiana Farm Bureau Insurance[,] thereby fulfilling its contractual obligations.

> 5.      That Indiana Farm Bureau agreed to pay the entire limits under the policy to or on behalf of Balz.

> 6.      That lndiana Farm Bureau agreed on behalf of Balz [to] "functional replacement costs" in the amount of $34,277.46.

7.      That the subject policy of insurance with Indiana Farm Bureau provided, "If at the time of the loss, (B) you contract for repair or replacement of the damaged building for the same use within 180 days [of the damage unless we and you otherwise agree; we will pay, after application of deductible, the lesser of the following amounts: (a) The limit of liability under this policy that applies to the building; or (b) The necessary amount actually spent to repair or replace the damaged building on a "functional replacement cost basis. . . . "].

8.      That Balz refused "to contract for repair or replacement of the damaged building" as expressly provided by the policy of insurance. Instead, he demanded that the money be paid directly to him.

9.      That CPR fulfilled its contractual obligations and was entitled to a fee equal to 10% of the policy limits.

10.      That Balz's claims for (1) Breach of Contract, (2) Breach of the Duty of Good Faith and Fair Dealing, (3) Fraud in the lnducement, (4) Constructive Fraud, (5) Negligent Misrepresentation, (6) Criminal Conversion, (7) Tortious Conversion, (8) Intentional lnfliction of Emotional Distress, and (9) Negligent lnfliction of Emotional Distress all fail as a matter of law.

App. Vol. II pp. 9-10. Balz now appeals.

# Analysis

Balz argues that the trial court erred by granting summary judgment to CPR. The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law.

*Sheehan Const. Co., Inc. v. Cont'l Cas. Co.*, 938 N.E.2d 685, 689 (Ind. 2010). On appeal from a summary judgment, we apply the same standard of review as the trial court: summary judgment is appropriate only where the designated evidentiary matter shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Young v. Hood's Gardens, Inc.*, 24 N.E.3d 421, 423-24 (Ind. 2015); *see also* Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Sheehan Const. Co., Inc.*, 938 N.E.2d at 688. The party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Auto-Owners Ins. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012), *trans. denied*.

[11] As to virtually all of his claims, Balz generally alleges the following:

> 104. [Balz] has suffered damages as a result of the wrongful conduct of [CPR]. [CPR] is liable to [Balz] for such damages suffered, in a reasonable amount, to compensate him for his loss, including, but not limited to reasonable costs of this litigation and attorney's fees, loss of his income and future financial stability and creditworthiness, mental anguish, mortification, extreme emotional distress and other damages.

> 105. The conduct of [CPR] was willful and intentional, and entered into knowingly by [CPR]. Moreover, [CPR]'s conduct amounts to gross negligence, reckless disregard of the rights of [Balz], and made with malice and oppression. Based on its conduct, [CPR] is liable to [Balz] for punitive damages.

App. Vol. III pp. 181-82.

### A. Breach of the Duty of Good Faith and Fair Dealing

[12]   Balz argues that genuine issues of material fact precluded entry of summary judgment in CPR's favor regarding his claim of breach of CPR's duty of good faith and fair dealing; in his complaint, he alleged:

> 58.    There is an implied duty of good faith and fair dealing in every contract, including the contract, and the course of dealings and patterns and practices—as well as any revisions offered by [CPR] —that amounted to contracts between [Balz] and [CPR].

> 59.    [CPR] breached its obligation of good faith and fair dealing with respect to the discharge of its contractual obligations, including, but not limited to (1) its failure to minimize the burden for [Balz]; (2) its refusal to abide by its contractual duties to assist in working with the insurer in processing [Balz's] insurance claim; (3) its utter failure to collect all money due under the claim; (4) its obtaining a large fee that was not earned; (5) its continual refusal to honor its repeated promises to provide Mr. Balz an accounting and turn claims processing over to him; and (6) all other improper and intentional bad acts designed to undermine the contractual obligations [CPR] owed [Balz].

> 60.    Through all of its wrongful conduct, [CPR] exercised an unfair advantage over [Balz] by refusing to act in a reasonable and workmanlike manner regarding its contractual duties to [Balz].  All [CPR]'s conduct described herein amounts to wrongful interference and destruction of [Balz's] business affairs.

> 61.    The breach of the duties of good faith and fair dealing to [Balz] committed by [CPR] has caused [Balz] damages, and has caused him to suffer monetary loss . . . .

App. Vol. III p. 11.

[13] Indiana courts have recognized an implied covenant of good faith and fair dealing in contract law, but generally only in limited circumstances involving employment contracts and insurance contracts. *Lake County Trust Co. v. Wine*, 704 N.E.2d 1035, 1039 (Ind. Ct. App. 1998). If the contract is ambiguous or expressly imposes such a duty on the parties, then the courts will impose such a duty. *First Fed. Sav. Bank of Ind. v. Key Markets, Inc.,* 559 N.E.2d 600, 604 (Ind. 1990). Our supreme court has explained our courts' reluctance to extend this duty to other, unambiguous contracts:

> It is not the province of courts to require a party acting pursuant to such a[n unambiguous] contract to be "reasonable," "fair," or show "good faith" cooperation. Such an assessment would go beyond the bounds of judicial duty and responsibility. It would be impossible for parties to rely on the written expressions of their duties and responsibilities. Further, it would place the court at the negotiation table with the parties.

*Id.*

[14] Here, the underlying agreement is unambiguous; it is neither an employment nor an insurance contract. The involvement of insurer Farm Bureau does not implicate the latter, as Farm Bureau is not a party to the agreement between Balz and CPR. Having found that CPR owed no duty to Balz, he is in no position to assert that CPR failed to exercise such duties in good faith. Accordingly, the trial court did not err in granting summary judgment in favor

of CPR regarding Balz's claim of breach of the duty of good faith and fair dealing.

### B. Breach of Contract

Balz argues as follows that genuine issues of material fact precluded entry of summary judgment in CPR's favor regarding his breach of contract claim. In his complaint, he alleged:

> 53.    At all relevant times, [CPR] had a contract with [Balz] and agreed to assist him in processing his insurance claim after his house fire on January 8, 2010.

> 54.    At all relevant times, [CPR] failed to perform its claims processing duties as promised, said failure amounting to breaches of contract.

> 55.    As a result of [CPR]'s breaches, but not limited to the violations stated herein, [Balz] has been damaged, has suffered monetary loss . . . .

> 56.    The breaches by [CPR] were willful and intentional, and entered into knowingly by [CPR]. Moreover, [CPR]'s conduct amounts to gross negligence, reckless disregard of the rights of [Balz], and made with malice and oppression. Based on its conduct, [CPR] is liable to [Balz] for punitive damages.

App. Vol. III p. 175.

"The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Fairfield Dev., Inc. v. Georgetown Woods Sr. Apartments Ltd. P'ship,* 768 N.E.2d 463, 473 (Ind. Ct. App.

2002). Here, the designated materials disclose that Balz entered into a written agreement with CPR, wherein CPR would represent Balz in claim negotiations with Farm Bureau in exchange for a fee of ten percent of the claim settlement. VanHimbergen presented Balz's claim to Farm Bureau; Farm Bureau agreed to pay policy limits, including functional replacement costs of $34,277.46, to Balz. In order for Balz to recover functional replacement costs, the Policy required Balz to "contract for the repair of the damaged building . . . within 180 days of the damage" unless Farm Bureau and Balz/CPR otherwise agreed. App. Vol. II p. 91.

[17] The designated materials, particularly Balz's deposition testimony, establish that he was intent on serving as the contractor for purposes of the repair (and having the money paid directly to him) rather than contracting with another person or entity to complete the repair, as was required under the terms of the Policy. As CPR argues, "Balz knew he was required to contract with someone to rebuild his residence, he had no intention of doing so, and CPR had no way of compelling him to do so." Appellee's Br. p. 24.

[18] Based on the foregoing, we conclude that CPR fulfilled its contract obligations to prepare and present Balz's claim to Farm Bureau when it obtained Farm Bureau's commitment to pay him policy limits, including $34,277.46 in functional replacement costs; however, the functional replacement costs were forfeited as a result of Balz's own actions and omissions. No genuine issue of material fact precluded entry of summary judgment regarding his breach of contract claim.

## C. Fraud in the Inducement

[19]     Balz argues that genuine issues of material fact precluded entry of summary judgment in CPR's favor regarding his claim of fraud in the inducement. In his complaint, he alleged:

> 70.     [CPR] made material misrepresentations of past or existing facts, including all the facts set forth supra, and including, but not limited to, statements that [CPR] would perform its duties to [Balz] in a reasonable and businesslike manner, and would honor its contracts with [Balz], including, but not limited to performing an inventory and making sure all monies owed [Balz] under his claim were, in fact, paid. [Balz] also relied on statements made by [CPR] that promised him a full accounting for its services and promises that it, [CPR], would relinquish the claims processing to [Balz]'s care, as well as other statements designed to make [Balz] act in reliance of same.

> 71.     The misrepresentations made by [CPR] to [Balz] were false.

> 72.     [CPR] made the misrepresentations to [Balz] knowing the statements were false or in reckless ignorance of the falsity.

> 73.     [Balz] relied upon [CPR]'s statements and such reliance was justifiable.

> 74.     [CPR]'s wrongful conduct injured [Balz] and caused him damages. [CPR] is liable to [Balz] for such damages suffered, in a reasonable amount, to compensate him for his loss . . . .

App. Vol. III p. 177.

[20]     CPR counters that "[n]othing in the record suggests that anything CPR said in any of those letters was a misrepresentation of a past or existing fact"; "Balz's only evidence in support of his position is his subjective belief that he could have received a larger settlement"; and "CPR's statements plainly were statements about the outcomes for previous clients and did not constitute an express or implied promise that Balz's claim would turn out in a certain way." Appellee's Br. p. 12.

[21]     To sustain an action for fraud, it must be proven that a material representation of a past or existing fact was made which was untrue and known to be untrue by the party making it or else recklessly made and that another party did in fact rely on the representation and was induced thereby to act to his detriment. *Fleetwood Corp. v. Mirich,* 404 N.E.2d 38, 42 (Ind. Ct. App. 1980). Fraud need not be proven by direct or positive evidence; it may be proven by circumstantial evidence, provided there are facts from which the existence of all the elements can be reasonably inferred. *Plymale v. Upright,* 419 N.E.2d 756, 760 (Ind. Ct. App. 1981).

[22]     Fraudulent inducement occurs when a party is induced through fraudulent misrepresentation to enter into a contract. *Lightning Litho, Inc. v. Danka Indus.,* 776 N.E.2d 1238, 1241 (Ind. Ct. App. 2002), *trans. denied.* Because the essential elements of fraudulent inducement are no different from any other action on fraud, the action may not be predicated upon representations of future conduct. *Siegel v. Williams,* 818 N.E.2d 510, 515 (Ind. Ct. App. 2004). While an oral promise as to future conduct will not support an ordinary fraud action, such

promise may form the basis of a constructive fraud action if the promise induces one to place himself in a worse position than he would have been in had no promise been made and if the party making the promise derives a benefit as a result of the promise. *Id.*

[23] Here, the designated facts establish that CPR's primary objectives were to present Balz's claim to Farm Bureau and to obtain a favorable claim payment. CPR successfully obtained Farm Bureau's promise to pay Balz the policy limits, *including* functional replacement costs. As Balz acknowledged in his deposition testimony, he did not accept Farm Bureau's express condition as to functional replacement costs; he, consequently, forfeited recovery of those benefits. Given that he otherwise recovered policy limits, and that his primary injury—the forfeiture—resulted directly from his own actions/omissions, Balz cannot establish that his reliance on any of CPR's statements, which really amounted to future predictions or puffery, caused the forfeiture. The trial court did not err in granting summary judgment in CPR's favor as to Balz's claim of fraud in the inducement.

### D. Constructive Fraud

[24] Balz argues that genuine issues of material fact precluded entry of summary judgment in CPR's favor regarding his claim of constructive fraud. In his complaint, he alleged:

> 77. [CPR] had a duty to [Balz] by virtue of its contractual relationship between the [CPR] and [Balz].

78. [CPR] violated its duty to [Balz] by the making of deceptive material misrepresentations of the past or existing facts or remaining silent when the duty to speak exists, including, but not limited to, statements that [CPR] would obtain more money for [Balz] if [CPR] handled the claim than if [Farm Bureau] handled the claim directly, as well as statements that [CPR] would obtain all proceeds [Balz] was entitled to receive under his policy of insurance. [CPR] also promised—falsely - that it would perform an inventory, but required [Balz]—in fragile health due to injuries incurred in the house fire—to do the work. [CPR] also promised to provide a complete accounting and turn over the claims processing to [Balz], and made other statements and omissions designed to unfairly mislead [Balz].

79. [Balz] relied thereon on the false statements made by [CPR].

80. [Balz] was injured by the wrongful conduct of [CPR] . . . .

81. [CPR] gained an unfair advantage at the expense of [Balz].

82. As a result, [Balz] suffered damages, and [CPR] is liable to [Balz] for such damages suffered . . . .

App. Vol. III pp. 178-179.

[25]     Constructive fraud may be found where one party takes unconscionable advantage of his dominant position in a confidential or fiduciary relationship. *Stoll v. Grimm,* 681 N.E.2d 749, 757 (Ind. Ct. App. 1997)*; see Estates of Kalwitz v. Kalwitz,* 717 N.E.2d 904, 913 (Ind. Ct. App. 1999) ("Any breach of a duty arising from a confidential or fiduciary relation, without any actual fraudulent intent gains an advantage at the expense of any one to whom he owes such

duty, amounts to a constructive fraud."). In addition, a representation regarding future conduct can, in some situations, give rise to a constructive fraud. *Wells v. Stone City Bank,* 691 N.E.2d 1246, 1250 (Ind. Ct. App. 1998), *trans. denied.* A confidential or fiduciary relationship exists when confidence is reposed by one party in another with resulting superiority and influence exercised by the other. *Drudge v. Brandt,* 698 N.E.2d 1245, 1250 (Ind. Ct. App. 1998). The question of whether a confidential relationship exists is one of fact to be determined by the finder of fact. *Dawson v. Hummer,* 649 N.E.2d 653, 661 (Ind. Ct. App. 1995).

[26] It is well-settled Indiana law that the parties cannot rely on a contractual relationship to create a duty. Contractual agreements do not give rise to a fiduciary relationship creating a duty. *See Comfax Corp. v. North American Van Lines, Inc.,* 587 N.E.2d 118, 125-26 (Ind. Ct. App. 1992) (holding that an arms-length, contractual arrangement does not create a fiduciary relationship and does not provide a basis for constructive fraud claim); *see also Orem v. Ivy Tech State College,* 711 N.E.2d 864, 869 (Ind. Ct. App. 1999) ("There must always be a violation of some duty owing to plaintiff, and generally such duty must arise by operation of law and not by mere agreement of the parties.") (citing BLACK'S LAW DICTIONARY 1489 (6th ed. 1990)), *trans. denied.*

[27] Absent a special relationship, which does not exist here, CPR does not have a duty to Balz. The trial court properly found that Balz's constructive fraud claim fails as a matter of law.

## E. Negligent Misrepresentation

[28]    Balz argues that genuine issues of material fact precluded entry of summary judgment in CPR's favor regarding his claim of negligent misrepresentation. In his complaint, he alleged:

> 85.    [CPR], in the course of its business, profession or employment, and in a transaction in which [CPR] had a pecuniary interest, supplied false information for the guidance of [Balz] in his business transactions, including but not limited to promises that [CPR] would provide insurance claims processing services for [Balz] in a reasonable and businesslike manner, and all promises [CPR] made to [Balz] that it would provide a full accounting for all the work it performed under the contracts in question and would turn the claims processing over to [Balz], and other statements which were caused by conduct precipitated by [CPR], and other such false statements, all designed for [Balz] to rely upon, and upon which he did rely, and acted upon to his detriment.

> 86.    [Balz] looked to [CPR]—who claimed to have expertise in claims handling as a public adjuster licensed under the laws of Indiana—to share its expertise regarding the transactions in question.

> 87.    [CPR] provided advice and guidance to [Balz], including but not limited to the advice described supra, and provided such advice and guidance with intent that the information provided would influence [Balz] in making his decisions.

> 88.    [Balz] had a justifiable reliance upon the information provided to him by [CPR].

89. [CPR] failed to exercise reasonable care or competence in obtaining or communicating the information about the transactions to [Balz].

90. [Balz] acted upon the information provided by [CPR] to his detriment and has suffered damages as a result of the wrongful conduct of [CPR]. . . . .

App. Vol. III p. 180.

[29] In its motion for summary judgment, CPR cited *Darst v. Illinois Farmers Ins. Co,* 716 N.E.2d 579, 585 (Ind. Ct. App. 1999), for the proposition that "despite the limited recognition of the tort in the context of an employer-employee relationship, Indiana does not recognize the tort of negligent misrepresentation." *See Short v. Haywood Printing Co., Inc.,* 667 N.E.2d 209, 213 (Ind. Ct. App. 1996) (holding that the tort of negligent misrepresentation is recognized only in employer-employee context under Indiana law). The designated materials establish the relationship of the parties to be as follows: Balz, a private individual, contracted with public adjusting company CPR, to negotiate his insurance claim against Farm Bureau; theirs is not an employer-employee relationship. Accordingly, the trial court did not err in granting summary judgment in favor of CPR regarding Balz's negligent misrepresentation claim.

### F. Intentional Infliction of Emotional Distress

[30] Balz argues that genuine issues of material fact precluded entry of summary judgment in CPR's favor regarding his claim of intentional infliction of

emotional distress. Specifically, he alleges that CPR solicited him when he had just lost his home, was dealing with medical injuries sustained in the fire, and "in shock"; he also argues that "as negotiations progressed with [Farm Bureau's adjuster], CPR did not return [his] calls, . . . did not negotiate with his homeowner's adjuster so that he could be the contractor for repairs of his home"; "caused him to lose insurance proceeds to which he was entitled"; "took its full fee from the benefit proceeds of the policy"; and "let the statute of limitations run." Appellant's Br. p. 23.

[31] Balz maintains that a question of fact exists as to whether CPR's conduct constituted intentional infliction of emotional distress. In his complaint, he alleged:

> 111.  [CPR] engaged in extreme and outrageous conduct in that it lured [Balz], in a weakened and fragile state, to enter a contract with [CPR] when [CPR]'s past conduct has shown that after it collects its unearned fee, it fails to complete the claims procedures it promised to handle. [CPR] preyed upon [Balz] and is destroying the fabric of our society by engaging in depraved conduct designed to deprive [Balz] of his insurance proceeds by skimming a ten percent (10%) fee from the insurance proceeds and allowing the statute to run on $34,277.46 of loss of structure proceeds simply because [CPR] had no "cut" of the remaining proceeds. It is outrageous and shocking that a public adjuster licensed to do business in the State of Indiana would enter a contract with [Balz] and fail to fulfill its duties to [Balz] under the contract. Indeed, [Farm Bureau] has stated it is [CPR]'s normal course of dealings and pattern and practice of conduct in the State of Indiana to prey upon individuals whose lives have been hit with tragedy. Approaching individuals after a fire ravages their home—or after being beset by some other equally tragic

loss—with only the intention of skimming a ten percent (10%) fee off the victim's insurance money re-victimizes such individuals. In this case, it goes without saying that the conduct [CPR] engaged in exceeds all bounds usually tolerated by a decent society and has caused [Balz] mental distress of a very serious kind. [CPR]'s conduct is atrocious and utterly intolerable in a civilized society as it has stripped [Balz] of his dignity by [CPR]'s conduct designed to re-victimize [Balz] after a total loss and serious injuries.

App. Vol. III pp. 183-85.

[32] In *Cullison v. Medley,* our Supreme Court adopted the tort of intentional infliction of emotional distress and described it as "extreme and outrageous conduct [that] intentionally or recklessly causes severe emotional distress to another." 570 N.E.2d 27, 31 (Ind. 1991) (quoting Restatement (Second) Of Torts § 46 (1965)). The intent to harm emotionally constitutes the basis of the tort. *Cullison,* 570 N.E.2d at 31. The elements of the tort are that a defendant (1) engages in extreme and outrageous conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another. *Lachenman v. Stice,* 838 N.E.2d 451 (Ind. Ct. App. 2005), *trans. denied.* The requirements to prove this tort are "rigorous." *Branham v. Celadon Trucking Servs., Inc.,* 744 N.E.2d 514, 523 (Ind. Ct. App. 2001).

[33] "Liability for intentional infliction of emotional distress is found only if there is extreme and outrageous conduct." *Bradley v. Hall,* 720 N.E.2d 747, 752 (Ind. Ct. App. 1999). In describing what constitutes extreme and outrageous conduct, we have cited the following comment:

d. *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id*. at 752-53 (quoting Restatement (Second) of Torts § 46). In other words, intentional infliction of emotional distress is found where conduct exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind. *Branham v. Celadon Trucking Servs., Inc.,* 744 N.E.2d 514, 514 (Ind. Ct. App. 2001). What constitutes extreme and outrageous conduct depends, in part, upon prevailing cultural norms and values. *Id.* In the appropriate case, the question can be decided as a matter of law. *Id.*

[34] Considering the facts in the light most favorable to Balz as the non-moving party and even assuming that CPR was inattentive or failed to attend to Balz's needs as it should have, we can conclude as a matter of law that CPR's conduct does not constitute "outrageous" behavior as contemplated by the narrow definition adopted from the Restatement. We cannot say that CPR's conduct was so extreme as to go beyond all possible bounds of decency or that it can be

regarded as atrocious and utterly intolerable in a civilized society. *See Bradley,* 720 N.E.2d 752-53. As we have observed: "The law does not provide a remedy for every annoyance that occurs in everyday life. Many things which are distressing or may be lacking in propriety or good taste are not actionable." *Branham,* 744 N.E.2d at 518 (citations omitted). Such is the case here, especially given that Balz's insistence on being designated as the contractor of record is the sole reason that he forfeited recovery of functional replacement costs benefits. The trial court did not err in granting the CPR's motion for summary judgment on the Balz's claim for intentional infliction of emotional distress.

### G. Request for Punitive Damages

Balz argues that genuine issues of material fact precluded entry of summary judgment in CPR's favor regarding his claim for punitive damages. He alleges that he is entitled to punitive damages because CPR engaged in "outrageous conduct" and "acted with gross negligence," in "reckless disregard" of his rights, "and with malice and oppression in its actions and material omissions." App. Vol. III p. 186.

To award punitive damages, "some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other such noniniquitous human failing." *Travelers Indemnity Co. v. Armstrong*, 442 N.E.2d 349, 362 (Ind. 1982). Furthermore, the public interest

must be served by the imposition of punitive damages. *Id.* at 362-363. Such damages must be proven by clear and convincing evidence. *Id.* at 363.

[37] Balz cannot meet his burden. Here, even construing the materials submitted for the summary judgment determination in the light most favorable to Balz, the conduct he alleges does not approach the level of egregious behavior required to recover punitive damages. The trial court thus properly granted summary judgment to CPR on the issue of punitive damages.

## Conclusion

[38] The trial court did not err in granting summary judgment in CPR's favor; Balz's claims each fail as a matter of law. We affirm.

[39] Affirmed.

[40] Vaidik, C.J., and Pyle, J., concur.